# Commonwealth *v.* Mediote, Appellant.

*Criminal law—Evidence—Contradiction of witness.*

1. In the investigation of an alleged crime, it is at least the right of
the commonwealth, if not its duty, to call all of the known witnesses
to the transaction. If the first witness called for any reason, corrupt
or otherwise, testifies so as to favor the acquittal of the defendant, the
commonwealth is not estopped from calling other witnesses whose testi-
mony may contradict that of the first witness.

*Criminal law—Sentence—New trial—Imprisoment.*

2. Where a prisoner is convicted and sentenced to imprisonment,
and on the same day committed to prison, the fact that the court on the
following day allows a rule for a new trial, and subsequently after the
end of the term discharges the rule, is no ground for reversal.

Submitted Oct. 5, 1908. Appeal, No. 13, April T., 1909, by

defendant, from judgment of Q. S. Lawrence Co., Dec. T., 1907, No. 18, on verdict of guilty in case of Commonwealth v. Frank Mediote. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Indictment for perjury. Before PORTER, P. J.

The court charged in part as follows:
[In the first place, gentlemen of the jury, you are to say whether or not the matters to which this defendant testified were true at the time he testified. Did he testify to that which was true, or did he testify to that which was false? If you find he testified to that which was false then you are to determine whether or not he did it willfully and corruptly. If you find he did it willfully and corruptly then it is your duty to convict him. If you find he did not, then you should acquit him.] [1]

[You will remember the testimony in that case as to the congregating of some persons at the house of one Mike Bruno, and as to what took place there. The testimony of the witnesses for the commonwealth as to what took place there and the testimony read to you from the notes of testimony taken at the trial of the case of the Commonwealth v. Sergi. You have also the testimony of the witnesses as to what occurred from the time they left the Bruno house until they arrived at the corner of John Vacca's store. You will remember the testimony of the witnesses for the commonwealth stated in your hearing and also the testimony as read to you from the record in the case of the Commonwealth against Sergi, as sworn to by this defendant.] [2]

[In this case as in all criminal cases the burden of proof is upon the commonwealth to satisfy the jury beyond a reasonable doubt of the guilt of the accused, before the jury is justified in returning a verdict of guilty. But when we say a reasonable doubt we do not mean such a doubt as you would search for, or hunt after in the evidence, but one that fairly presents itself to you in the consideration of the testimony— one that causes you to halt in arriving at a conclusion. In other words, gentlemen, a reasonable doubt is a conscientious

difficulty in finding that the defendant is guilty of the offense charged in the indictment. When the defendant comes into court the law presumes that he is innocent, and until this presumption of innocence shall have been removed by the testimony adduced on the part of the commonwealth, the jury cannot but regard him as innocent. But when the commonwealth shall have produced evidence that satisfies the jury beyond a reasonable doubt of his guilt, then it is the duty of the jury to convict, and until the jury is so satisfied beyond a reasonable doubt, the jury should not convict.] [3]

Defendant's points are as follows:

6. The commonwealth having called Rosario Sergi as a witness in its behalf, who testified that he was stabbed under the arm by Tony Conti at the corner of John Vacca's store, the commonwealth is bound by that testimony and could not legally contradict the same, and the defendant could not be guilty of any testimony he gave in the trial of the case of the Commonwealth v. Rosario Sergi so far as the stabbing of Sergi by Conti at the same place is concerned. *Answer:* Under the facts in this case we do not find as requested in this point and it is therefore refused. [4]

8. If the jury believe that the night of June 8, 1907, was an exceedingly dark night, there being no street lights, lights from houses in the vicinity, moonlight or starlight so far as the evidence discloses, and there being a large number at Mike Bruno's where the trouble is alleged to have occurred and the greater part of which crowd left the said house and went to the corner of John Vacca's store, and if on account of the darkness, size of the crowd and the fact that there is no testimony on the part of the commonwealth as to who and what number were at the house and on the road and their inattention to these matters the witnesses for the commonwealth do not positively know whether Frank Mediote was there or not, or if the jury have any reasonable doubt on this subject they should find the defendant not guilty. *Answer:* An affirmance of this point would require the court to pass upon certain matters of testimony in this case and declare as facts certain things related in this point which are wholly within the province of the jury. The

court will refrain from stating what the facts are in the case and leave that wholly to the jury, and we therefore do not affirm this point. [5]

Verdict of guilty, upon which the court sentenced the prisoner to pay a fine of $10.00 and undergo an imprisonment in the penitentiary for five years and six months.

*Errors assigned* were (5) above instructions; (6) the sentence of the court, and (7) in refusing motion for new trial nunc pro tunc.

*J. V. Cunningham* and *J. Norman Martin*, for appellant.— We submit that the entertainment of the motion and the direction given by the court to the clerk operated as a vacation of the sentence and judgment of the court, and that the court could not, after the expiration of the term, make an order nunc pro tunc: Com. v. Mayloy, 57 Pa. 291; Com. v. Foster, 122 Mass. 317; Brown v. Rice, 57 Maine, 55; Com. v. Weymouth, 84 Mass. 144.

*Charles H. Young*, district attorney, for appellee.

Opinion by Head, J., February 26, 1909:

The first, second and third assignments complain of the scope and character of the charge delivered by the learned trial judge. Each assignment is an excerpt of some length from the charge. From a consideration of all of them the learned counsel for appellant draws the conclusion "that the charge of the court, in substance and in fact, directed the jury to find a verdict of guilty if they were convinced by the testimony of the commonwealth—ignoring the testimony of the defendant—that the defendant was guilty."

Against such an attack that which is written must provide its own defense. It cannot be aided from without. We have read the whole of the charge with care and we are all of opinion it is not fairly open to the criticism made of it. The charge opens by naming the crime of which the defendant was accused in the single count in the indictment—viz.: perjury—and then

continues, "It is for you, gentlemen, to say whether or not under the evidence that has been produced in the trial of this case the defendant be guilty or not," etc. The learned judge then reminds the jury of the gravity of the offense, the consequent care with which they should investigate; explained the essential nature of the offense and the difference between a statement merely false in fact but not in intent, and willful and corrupt perjury.

The presumption of innocence that protects everyone accused until shattered by convincing evidence inconsistent with its longer continuance; the burden of proof resting on the commonwealth; the prisoner's right to the benefit of any reasonable doubt and the nature of that doubt, all of these subjects were clearly and we think correctly explained. The learned judge did not attempt to rehearse the evidence in detail upon either side and makes no mention of any witness except in that portion in which he tries to lay before the minds of the jury the particular thing which was alleged to be the corpus delicti. Following this he gives this clear instruction as to the province of the jury: "You are to say whether or not the matters to which this defendant testified were true at the time he testified. Did he testify to that which was true or to that which was false? If you find he testified to that which was false, then you are to determine whether or not he did it willfully and corruptly. If you find he did . . . . it is your duty to convict. If you find he did not then you should acquit him."

Certainly not in the portions of the charge quoted, nor in all of it as a whole, can we find any evidence of any intention on the part of the learned trial judge to withdraw any testimony from the jury or to divert their attention from an impartial consideration, under all of the evidence, of the material issue he had so plainly submitted to them. These assignments must therefore be dismissed.

The sixth point of the defendant (fourth assignment) naturally invites some examination of the testimony. It has not been printed in the paper-book, the appeal being in forma pauperis. We have a right to assume as correct the statement of fact concerning it made by the district attorney in his brief

for the appellee.  If the witness Sergi was called by the common-
wealth for the sole purpose of showing "the place on his body
where he received the wound," it must be manifest there is no
merit in this assignment.  But on broader grounds we are un-
able to assent to the soundness of the proposition we understand
the point to assert.  In the investigation of an alleged crime, it
is at least the right of the commonwealth, if not its duty, to call
all of the known witnesses to the transaction.  If the first wit-
ness called, for any reason, corrupt or otherwise, should so
testify as to favor the acquittal of the defendant, then the com-
monwealth would be estopped from offering any evidence that
would tend to establish his guilt because, as the point asserts,
"the commonwealth is bound by that testimony and could not
legally contradict the same."  This theory we regard as unten-
able.

The eighth point (fifth assignment) is chiefly a statement of a
number of isolated matters of fact.  It did not invite the ex-
planation of any legal principle.  Its affirmance by the court
might have led the jury to believe the trial judge adopted, as
established facts, everything therein stated.  The answer to it
left the defendant no just cause of complaint.

On December 10, 1907, a verdict of guilty was rendered, and
on the same day the defendant was sentenced, in due form, to
undergo a period of imprisonment in the penitentiary.  On the
following day a motion for a new trial was presented upon which
the following order appears: "Now, etc., the within motion pre-
sented in open court, the motion is entertained and the stenog-
rapher directed to write out, etc., and the defendant to have
twenty days in which to file additional reasons," etc.  This is
the formal and usual order that is prepared by counsel when
filing such motions.  It will be observed it makes no allusion to
the fact that sentence had already been pronounced and em-
braces no direction and asks for no action by the court on that
subject.  It is alleged, in the petition to which we shall pre-
sently refer, that, at the time the above order was made, the
learned trial court verbally directed the clerk to withhold the
commitment.  No such order or direction appears in the record
as certified to us, and that we must accept as verity.  In point

of fact the commitment went regularly to the sheriff, who, in the performance of his duty, on the succeeding day, December 12, removed the defendant to the penitentiary.

Beyond the fact that the stenographer promptly filed, on December 30, the copy of the charge as directed in the order of December 11, nothing further was done until on April 30, 1908, a petition was presented setting forth the facts already adverted to, and praying the court "to direct the clerk to perfect and complete the record in this case so that the action of the court, at the time of entertaining the motion for a new trial, shall appear of record." A rule to show cause was granted and the case ordered on the argument list. The record does not show that testimony, by depositions or otherwise, was taken, that any answer was filed or even a hearing had; it only shows that on May 11, without any opinion, the court made an order, "the prayer of the within petition is refused," and on the same day another, to wit: "The motion for a new trial in this case is refused, nunc pro tunc as of December 11, 1907."

By this appeal we are asked to reverse the judgment and send the case back to be retried. Upon what basis could such action properly rest? We have already determined that the defendant was fairly tried according to the laws of the land. He was convicted by a jury of his peers. His sentence followed of course. That it followed swiftly in no way militates against any of the fundamental principles upon which our system of criminal jurisprudence is built. No statute declares that a sentence, imposed as this one was, is either irregular or illegal; no decision of our courts of appeal has so pronounced. No such question was ruled in Com. v. Mayloy, 57 Pa. 291. What was decided in that case is put beyond question by the following statement in the opinion: "The single question to be decided is as to the power of the criminal courts of this county (Philadelphia) to reconsider a sentence, after the term at which it was pronounced, and during the progress of its execution, and to modify or diminish its extent, the rule for which being entered at the time of sentence, and within the term." To so dispose of ordinary criminal cases has become, ex necessitate, the almost universal practice in the courts of our populous counties. We

cannot say, therefore, that in imposing sentence promptly after the rendition of the verdict the learned trial judge violated any law or deprived the defendant of any right secured to him by the constitution and laws.

Did any new right inure or accrue to him because the court, on the day after sentence, "entertained" or permitted to be filed a motion for a new trial? Had an appeal then been taken to this or to the Supreme Court for the correction of alleged trial errors, it will not be contended that such appeal, without a special order of supersedeas, would in any way stop the running of the sentence. A motion for a new trial, which is in the nature of a writ of error coram vobis, ought not, in reason, to have any greater significance.

While the case, as we have it before us, presents some unusual features, we are all of the opinion that the defendant had a fair and impartial trial and that the record of that trial exhibits no reversible error.

Judgment affirmed.