## Commonwealth *v.* Searles, Appellant.

Argued November 12, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Joseph N. Bongiovanni, III,* with him *James J. De-Marco,* for appellant.

*Stephen J. Margolin,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice O'Brien, December 20, 1971:

Appellant, Willie Searles, shot his neighbor, Henry Lambert, after a few drinks and a brief argument in Searles' home on October 4, 1969. Ten days later Lambert died and Searles was brought to trial on charges of murder, voluntary manslaughter and involuntary manslaughter. Appellant waived a jury trial and was found guilty of voluntary manslaughter by the court. After denial of his post-trial motions, appellant was sentenced to a term of three to twelve years. He now appeals that judgment of sentence.

On appeal, appellant raises two arguments. First, he claims that the trial court erred in refusing to find that appellant had proved that he shot Lambert in self-defense.

At trial, appellant testified in his own behalf that he got into an argument with Lambert and that, fearing Lambert, who had threatened to throw him out of his own home, because of Lambert's reputation for being "fast with a knife" and because Lambert had actually pulled a knife on him about one year previously, appellant had picked up his loaded gun. Then, according to appellant, Lambert went for the gun, grabbed at him, and appellant, fearing for his life, held onto the gun and started shooting.

It is hornbook law, as spelled out in *Commonwealth v. Johnston*, 438 Pa. 485, 263 A. 2d 376 (1970), that before one can successfully invoke the defense of self-defense: "(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing [omitting citation]. (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom [omitting citations]. (3) The

slayer must not have violated any duty to retreat or avoid the danger [omitting citations]."

Applying these principles to the appellant's defense, as contained in his own testimony, appellant may not have established that he was free from fault in continuing the difficulty which resulted in the killing because it was he who introduced the gun into the argument and, even if he were correct that it was necessary to fire the first bullet in self-defense, it seems unlikely that the repeated firing into Lambert after Lambert had dropped to the floor from the first shot was necessary for self-defense.

Moreover, appellant's statement to the police, the voluntariness of which is not contested, presents a different version of the killing. According to appellant's statement, after Lambert told him "I'm going to put you out of here," "Then he hit me up side my head with his fist and I pushed him away and I got the gun from the cabinet and I shot him."

In this statement, appellant goes on to say that he had no idea whether Lambert had a weapon. At no time in this statement does appellant indicate that Lambert ever went for the gun or threatened to do so. Since the statement is also substantive evidence, it is not correct to say, as appellant argues, that the version which he gave at trial was uncontradicted.

Appellant raises one more allegation of error. To establish that this fear for his life was reasonable, appellant sought evidence of Lambert's reputation for violence, including evidence of specific incidents where Lambert had pulled a knife on someone. Two witnesses did testify, but others in the neighborhood who had been contacted refused to do so. Appellant sought to introduce the testimony of an investigator as to what various neighbors had told him about Lambert's reputation but the court refused to permit the introduction of such testimony.

The court's decision was proper since the testimony was clearly hearsay.

Appellant argues that the offered testimony was not hearsay because it was not offered for the truthfulness of its contents but "merely to show the sentiments of the decedent's peer group." An investigator, testifying only as to what others told him that they believed, is offering evidence to show the truth of the statements made to him by the decedent's neighbors as to their beliefs. The only competent testimony of such sentiments would be testimony of members of the "peer group," themselves. They could then be cross-examined to discover upon what basis they formed such sentiments.

Judgment of sentence affirmed.

Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.