## Commonwealth *v.* Edwards, Appellant.

Argued November 11, 1971. Before Jones, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Nelson Romisher,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Robyn Greene,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Pomeroy, June 28, 1972:

On Saturday, February 6, 1971, at approximately 7:20 P.M., Willie Ray Pierce was shot and killed in the dwelling house located at 1924 N. 8th Street, Philadelphia. Charles Edwards, the appellant, was indicted on four bills charging murder, voluntary manslaughter,

involuntary manslaughter, and carrying a concealed deadly weapon. A nonjury trial resulted in a verdict of voluntary manslaughter. Following the denial of post-trial motions, appellant was sentenced to imprisonment at the State Correctional Institute for a period of one to five years. This appeal followed. The sole issue is whether the evidence supports the finding of voluntary manslaughter or whether, on the contrary, it establishes that the shooting of Pierce was an act of self defense.

The evidence showed that appellant, who was separated from his wife, and Margaret Pierce, estranged wife of the deceased, had met in South Carolina and there entered into a meretricious relationship. Early in 1971, they moved with Margaret's children to Philadelphia and took up residence at 1924 N. 8th Street in a single family dwelling owned by appellant's sister, Mrs. Rutha Schofield, who herself lived at another address. Appellant rented sleeping quarters on the third floor of this building, and had free use of the entire house, including the bathrooms on the first and second floors. Appellant was employed at a gasoline service station where from midnight until eight o'clock in the morning he was the sole attendant.

According to undisputed testimony, Willie Ray Pierce had left his home in South Carolina to come to Philadelphia to confront appellant and recover his family. He learned from Mrs. Schofield, through a ruse not here important, where Edwards was living, and proceeded to the 8th Street address. In front of the house he encountered and spoke to his young daughter, who commenced to cry. At this point Pierce's wife, Margaret, looked out an upstairs window, and seeing her husband, closed the window and pulled the blind. Pierce then entered the house, and the fatal confrontation with Edwards ensued.

The Commonwealth's evidence of the quarrel was supplied by one Bertha Isaac, appellant's niece (daughter of Rutha Schofield) and a signed statement made by appellant after his arrest. Miss Isaac was in the basement when the altercation began. Hearing noises, she immediately went upstairs to investigate and found appellant and the deceased fighting on the second floor landing. According to her account, appellant's head was being battered against the wall, while he was struggling to get away.[1] Edwards succeeded in this effort momentarily, whereupon Pierce glanced at Bertha Isaac and she ordered him to leave; instead, he renewed the fight. At this point, according to Miss Isaac, the appellant pulled his gun and fired the fatal shot from point-blank range.

Appellant's signed statement does not vary from the testimony of Bertha Isaac in any material respect. His explanation for carrying the gun, purchased the year before in South Carolina, was that he had left it in his trousers pocket that morning after returning from work, where he needed the weapon for protection on the "graveyard shift."

The appellant testified in his own behalf. He stated that on the day involved he left work as usual and went home to bed; that he was awakened once during the afternoon by the telephone, but returned to bed; that at about 7:15 he awoke again, put on slippers and his work trousers and went downstairs to go to the bathroom on the second floor; that as he descended the stairs he was surprised by Pierce on the floor below; that Pierce struck him twice in the right jaw, knocked his head against the wall, and tried to choke him; and that although he did manage to push Pierce away from him, Pierce renewed the assault. Appellant stated that

---

[1] Both men weighed over 200 pounds. Appellant's height was 5'7", while the deceased's was 6'4".

he did not know Pierce, nor that he was Margaret's husband. He said he felt he was in immediate danger of great harm because "The man was choking me to death." He testified that the gun was always in his pants pocket.

As we have said many times, voluntary manslaughter is the intentional killing of another, done without malice aforethought but in the sudden heat of passion caused by adequate legal provocation, before sufficient time has elapsed for "the blood to cool" and reason to reassume control of the actor's conduct. It is the lowest grade of felonious homicide. See 1 Wharton, Criminal Law Procedure, §274 (1957) ; *Commonwealth v. Zapata,* 447 Pa. 322, 290 A. 2d 114 (1972).

To invoke successfully the affirmative defense of self defense, the following concurring elements must be established by the defendant by a preponderance of the evidence: "(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing. . . . (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom. . . . (3) The slayer must not have violated any duty to retreat or avoid the danger. . . ." *Commonwealth v. Roundtree,* 440 Pa. 199, 204, 269 A. 2d 709, 712 (1970) (citations omitted) ; accord *Commonwealth v. Johnston,* 438 Pa. 485, 489, 263 A. 2d 376, 379 (1970) ; *Commonwealth v. Zapata, supra.* There is, however, an exception to the last condition of this rule. As we stated it in *Commonwealth v. Johnston, supra,* "Where a man is dangerously assaulted or feloniously attacked in his own dwelling house by one not a member of the household, he need not retreat, but may stand his ground and meet deadly force with deadly force to save his own life, or to protect himself from

great bodily harm: Commonwealth v. Wilkes, 414 Pa. 246, 199 A. 2d 411 (1964), cert. denied, 379 U.S. 939, 85 S. Ct. 344, 13 L. Ed. 2d 349 (1964); Commonwealth v. Fraser, 369 Pa. 273, 85 A. 2d 126 (1952)."[2]

It is true, of course, that if the Commonwealth's proof does not show a felonious homicide but rather an excusable killing, there is no burden on the defendant to establish his affirmative defense; in such a situation the Commonwealth has failed in its primary task of proving felonious homicide beyond a reasonable doubt. *Commonwealth v. Johnston, supra.*

Reviewing the record in this case, it seems clear to us that the Commonwealth's evidence did not itself show a justifiable killing, and that the appellant could not rely upon it to avoid, as a matter of law, a finding of felonious homicide and the necessity of establishing the elements of self defense by a preponderance of the evidence. That evidence did indeed show the presence of two of the elements of self defense. First, the appellant was assaulted in his own home, which relieved him of any obligation to retreat.[3] He thus was entitled to stand his ground and meet any assault with commensurate force. Second, the appellant neither provoked the fight nor sought to continue it. It is not to condone meretricious relationships to say that living with another's separated spouse does not provide legal excuse to the aggrieved husband for the type of self help recourse here chosen by the deceased. Even if it be

---

[2] *Commonwealth v. Johnston, supra,* extended the no-retreat exception to include place of business as well as dwelling house (an extension to which the writer of this opinion dissented). That holding is not involved in the case at bar.

[3] The Commonwealth suggests in its brief that appellant's home was really only the third floor which he rented, and that he therefore should have retreated there. That he had permission to use and in fact required the facilities of the rest of the house adequately establishes the entire house as his dwelling.

conceded, *arguendo*, that appellant's conduct was the originating cause of the struggle, the Commonwealth's own witness, Bertha Isaac, established that following the pause in the fighting it was the deceased who became the aggressor. Cf. *Commonwealth v. Wrona*, 442 Pa. 201, 275 A. 2d 78 (1971), where the defendant became the aggressor after the victim had backed off. Where the original assailant becomes the assaulted, it is he who then has a right of self defense.

Despite appellant's lack of culpability in provoking the fight and his right to defend himself without retreating once involved in it, the trial judge found that the third condition for self defense, i.e., that no reasonably safe means of defense other than killing his assailant existed, had not been met. He found that there was a reasonable opportunity during the pause in the fight to reveal the gun to the deceased and warn him away; hence the force employed by appellant could not be considered reasonable under the circumstances. Whether the burden of showing necessity to kill in order to avoid imminent danger of death to oneself has been met is strictly a question for the fact finder to decide. *Commonwealth v. Commander*, 436 Pa. 532, 541, 260 A. 2d 773 (1970) ; *Commonwealth v. Lawrence*, 428 Pa. 188, 193, 236 A. 2d 768 (1968). In the case at bar, we are satisfied that, accepting as true all of the evidence and the reasonable inferences arising therefrom upon which the trial judge could properly have reached his verdict, it was sufficient in law to prove beyond a reasonable doubt that the defendant was guilty of the crime of voluntary manslaughter. *Commonwealth v. Wrona, supra.*

Judgment of sentence affirmed.

Mr. Justice EAGEN dissents.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.