Commonwealth *v.* Tiernan, Appellant.

Argued November 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Donald J. Goldberg,* with him *Edward F. Kane,* for appellant.

*William T. Nicholas,* First Assistant District Attorney, with him *J. David Bean* and *Stewart J. Greenleaf,* Assistant District Attorneys, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 24, 1974:

Appellant, Henry W. Tiernan, Jr., was tried before a judge and jury and found guilty of voluntary manslaughter. Post-trial motions were denied and appellant was sentenced to a term of not less than two nor more than five years in a state correctional institution and ordered to pay a $1,000 fine. This appeal followed.

The Commonwealth presented its case through one Mrs. Margaret Garvin. She testified that between February of 1971 and May of 1971 she and appellant had engaged in various acts of intimacy in a local motel. In May of 1971, Mrs. Garvin began living with the victim, James Anderson, and had no further contact with appellant until August 21, 1971, the date of the homicide. On the day of the homicide, Anderson, Tiernan and Garvin happened to meet at the Tally Ho Motel, where the three drank and swam until they decided to leave. The three then proceeded to appellant's home in order that they might have a nightcap with appellant's wife, Barbara. Along the way, Anderson stopped for a package of cigarettes and returned to the automobile to find appellant and Mrs. Garvin kissing. At this point, Anderson pulled a revolver from his pocket and told Tiernan that he was going to kill him. Anderson then pocketed his revolver and re-entered the automobile and

stated that he was going to tell appellant's wife that appellant had been involved with Mrs. Garvin. At the apartment complex where appellant lived, Anderson ordered his companions out of the car at gunpoint and ordered appellant to give him the keys to appellant's apartment. Unable to find appellant's apartment on his own, Anderson ordered appellant to direct him to it. At first appellant did not cooperate, but after Anderson physically assaulted him, Tiernan led Anderson to his apartment. The three entered the apartment where Anderson immediately began to tell appellant's wife of the relationship between Mrs. Garvin and appellant. Mrs. Garvin and appellant told appellant's wife that the story was a lot of nonsense and the group quieted down and appellant's wife forced appellant into the bedroom. Here is where the stories of Mrs. Garvin and appellant differ.

According to Mrs. Garvin, after Mrs. Tiernan returned to the kitchen to make coffee, appellant came from the bedroom with his revolver drawn, causing the victim to draw his weapon, after which an exchange of shots took place. According to appellant, after his wife refused his request to call the police, and returned to the kitchen, he picked up his revolver and left the bedroom and entered the kitchen, where he was seen by the victim, who already had his weapon drawn. Appellant then shouted "drop it," but the victim refused and an exchange of gunfire took place, causing the death of Anderson.

Appellant first alleges that the evidence was insufficient to support the verdict in this case, because the Commonwealth, by its own evidence, proved that the killing was done in self-defense. In order for the killing to be done in self-defense, three elements must be present: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) the slayer must have reasonably be-

lieved that he was in imminent danger of death, great bodily harm, or some felony and that there was a necessity to kill in order to save himself; and (3) the slayer must not have violated any duty to retreat or avoid danger. See *Commonwealth v. Johnston,* 438 Pa. 485 (1970). Contrary to appellant's contention, the facts of this case, as produced by the Commonwealth, do not prove that the homicide was done in self-defense.

According to the Commonwealth witness, the decedent was no longer dangerous when he entered appellant's apartment. Instead, the decedent had accepted an invitation for coffee and was seated peacefully on the sofa, with no weapon drawn, and making no threats to take the lives of any persons in the apartment. From this testimony, the jury could have reasonably concluded that when appellant came out, pointing a loaded gun, he became the aggressor and lost whatever claim he may have had to self-defense, since he had failed to prove that he was without fault. See *Commonwealth v. Searles,* 445 Pa. 240, 285 A. 2d 179 (1971). In addition, on the basis of Mrs. Garvin's testimony that the decedent was no longer violent, the jury could well have concluded that the initial fear which appellant may have had should have reasonably subsided, and that he, therefore, acted out of an *unreasonable* fear for his life and the lives of others. See *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A. 2d 108 (1970). Thus, appellant was not entitled to a judgment of acquittal. If reached after proper instructions, a jury verdict of guilty would be supported by the record.

Appellant next alleges, however, that the jury was not given proper instructions. With this allegation we agree. The record shows that the appellant requested that the jury be given the following instructions concerning his kissing of Mrs. Garvin while in the presence of the decedent: ". . . Ladies and gentlemen, I specifically instruct you that you cannot consider the mere

embrace or kissing of Mrs. Garvin by the defendant in James Anderson's car as being sufficient to find that the defendant provoked the difficulty which resulted in the killing. In other words, you cannot find that the defendant was at fault in provoking the difficulty which resulted in the killing, merely because he kissed Mrs. Garvin."

The court refused this request. Instead, the court told the jury:

". . . The philosophy of the law is very simple. One may not provoke and thereby create a situation which he should reasonably have anticipated would result from his actions, and then claim that his response is excusable in self-defense. To take the situation out of the purely human realm, a man may not tease a dog to the point where the dog attacks and then shoot the dog in self-defense and still expect other men to approve of that. I use that illustration not to suggest anything comparable occurred in this case, but merely to illustrate the basic philosophy of the law in making this provision.

"In this area of inquiry, as in all phases of the case, you must determine all of the facts which bear upon the question of whether the defendant was free from fault in provoking the difficulty.

"Specifically, considering all the circumstances, should the defendant have reasonably anticipated, and I stress that word reasonably, that his conduct with Margaret Garvin in the car, if seen by Anderson, would provoke the difficulty which, in fact, developed. If so, the defendant was not free from fault. If not, then as to that incident, at least, he was free from fault. The issue is for you to determine under all the evidence pertaining to the matter."

In giving this charge instead of that requested by appellant, the court was clearly in error.

In *Commonwealth v. Edwards,* 448 Pa. 79, 292 A. 2d 361 (1972), when discussing what acts will show that a person is free from fault in provoking an incident that leads to a death, we stated: "The appellant neither provoked the fight nor sought to continue it. It is not to condone meretricious relationships to say that living with another's spouse does not provide legal excuse to the aggrieved husband for the type of self-help recourse chosen by the deceased." at page 84.

If the defendant in *Edwards* must be considered free from fault even though he lived with his victim's wife, certainly the appellant's act of kissing his victim's girl-friend cannot be considered sufficient to establish that appellant was at fault in provoking the decedent.

Since the jury was incorrectly told that they might consider this act of kissing, appellant is entitled to a new trial.

Judgment of sentence reversed and case remanded to the Court of Common Pleas, Criminal Trial Division, of Montgomery County for a new trial.