331 A.2d 488
**COMMONWEALTH of Pennsylvania, Appellee,**
**v.**
**Frederick Gerard MAHONEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1974.

Decided Jan. 27, 1975.

202

Harold Gondelman, Richard H. Martin, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, for appellant.

Albert M. Nichols, Dist. Atty., R. G. Weisgerber, Greensburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellant, Frederick Gerard Mahoney, was convicted by a jury of voluntary manslaughter. Post trial motions

were denied and a sentence of one and one-half to six years imprisonment was imposed. This direct appeal followed. The sole issue is whether the evidence supports the finding of voluntary manslaughter or whether, on the contrary, it establishes that the shooting was an act of self-defense.

The record read in the light most favorable to the Commonwealth discloses the following pertinent facts:

On October 28, 1971, at approximately 2:00 a. m., the decedent, William Masser, and his estranged wife, Jean Masser, were conversing in the living room of the latter's apartment. The appellant knocked on the door of the apartment and called out "Jean . . .", whereupon Masser rushed from his seat, opened the door, and commenced punching Mahoney about the face. Mahoney tried to flee, but slipped enabling Masser to further the onslaught. No attempt was made by the appellant to strike Masser, rather he merely sought to protect himself. Eventually, Mahoney was able to escape and fled outside to the parking lot where he had parked his automobile. Masser, after first returning to the apartment, followed Mahoney outside. While Mahoney sat in his automobile, Masser crouched down at the driver's seat of the vehicle and began pounding on the vehicle with his hands. Masser than moved around the automobile and stood up near the headlight on the passenger's side. Mahoney reached under the seat of his automobile and grabbed a gun, which he kept for security purposes, and, after warning Masser to leave him alone, fired a shot. Apparently enraged by this shot, Masser moved towards a dog pen approximately twenty feet from the vehicle and picked up a concrete block weighing between forty and fifty pounds. Mahoney attempted to back his automobile around in order to leave the parking area, but struck a tree and the vehicle stalled. Mahoney then perceived Masser coming directly towards him carrying the concrete block at shoulder level. Without breaking

stride, Masser lunged toward the vehicle with the concrete block and, simultaneously therewith, Mahoney fired three shots in rapid succession. The concrete block smashed through the window on the driver's side and landed in the driver's seat. Masser, mortally wounded by the final shot,[1] slumped to the ground just outside the door of the vehicle. The appellant made no attempt to flee and remained at the apartment building where he was apprehended by the police.

It is fundamental that the killing of another human being without justification or excuse is felonious homicide. *Commonwealth v. Wucherer*, 351 Pa. 305, 41 A.2d 574 (1945), and 4 Blackstone Commentaries, 188 (1898). However, a killing is not felonious homicide and is excusable if it is committed in self-defense.

*Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970); *Commonwealth v. Vassar*, 370 Pa. 551, 88 A.2d 725 (1952). The following conditions must be satisfied before one can successfully invoke the defense of self-defense: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) he must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom; (3) the slayer must not have violated any duty to retreat or avoid the danger. *Commonwealth v. Johnston*, supra, 438 Pa. at 489, 263 A.2d at 379. See also *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Tiernan*, 455 Pa. 88, 314 A.2d 310 (1974).

If the Commonwealth's own evidence establishes that the killing occurred under the conditions outlined above,

1. Dr. Marion H. Crumlish, who performed the autopsy, testified that the fatal wound was the wound in the head. She stated death from this type of wound would be practically instantaneous and would render the injured individual incapable of carrying a heavy concrete block such as that herein involved.

then it has failed to prove a felonious killing and the defendant may not be convicted of even voluntary manslaughter. Cf. *Commonwealth v. Johnston*, supra. This is such a case.

The testimony of the Commonwealth's own witnesses establishes the appellant did attempt to escape from the parking lot, but in his haste, backed his automobile into a tree causing it to stall. Trapped in his automobile and confronted by an onrushing assailant, armed with a weighty concrete block, it is evident that appellant's fears for his own safety were reasonable, and it is undisputed that appellant fired at Masser contemporaneous with the latter's lunge toward the vehicle, when no viable alternative existed. Thus, it is clear the Commonwealth's own evidence established two of the three necessary elements of the defense of self-defense previously delineated.

However, to successfully invoke the defense of self-defense, "the slayer must have been free from fault in provoking *or continuing* the difficulty which resulted in the killing." (Emphasis supplied.) *Commonwealth v. Ware*, 453 Pa. 15, 19, 307 A.2d 840, 843 (1973). It is undisputed that Masser attacked the appellant outside of his estranged wife's apartment and followed the appellant to the parking lot, where he continued to threaten the appellant. The facts show the appellant, while in his automobile and after having warned Masser to leave him alone, caused his weapon to discharge. One of the Commonwealth's witnesses, a Miss Shendowich, testified she believed this shot to be a warning shot. Although, she admitted not having seen the shot fired, she stated she did see the gun pointing away from Masser. As we have previously condoned the firing of warning shots in an attempt to ward off an attacker, see *Commonwealth v. Johnston*, supra, the appellant contends this testimony established he was free from fault in continuing the difficulty.

The Commonwealth, however, presented evidence indicating the first shot fired, rather than being a warning shot, did strike the decedent. The investigating police officer testified that four spent bullet casings were found in and around the apartment parking lot, raising the probability that only four shots were fired from the appellant's gun. This officer testified that one bullet had penetrated the casing on the inside of the driver's door and, although not recovered, had become lodged therein. An autopsy of the victim's body revealed the deceased had suffered seven wounds caused by three bullets. One bullet entered the right shoulder and exited in the right armpit. Another bullet caused shallow glancing wounds on the right side of the neck and over the center of the right collarbone. The third bullet caused the fatal wound to the head.

Having accounted for the four bullets, the Commonwealth advances the theory that the first shot, rather than being a warning shot, struck the decedent as he stood in front of the vehicle and brought on the ensuing attack with the concrete block. It argues the other three shots were fired by the appellant from the passenger's side of the automobile at the decedent who was lunging at the vehicle from the driver's side, with two shots, including the fatal one, striking the decedent. The third shot, it contends entered the inner door on the driver's side.

■■ The appellant does not seek to refute the Commonwealth's contentions, but maintains the Commonwealth is bound by the testimony of its own witness. Miss Shendowich, and should not be permitted to claim the first shot was other than a warning shot. But the mere calling of a witness does not warrant the conclusion that the party thereby admits as true everything the witness may say, and he is not estopped from proving the facts to be otherwise by other evidence. *Commonwealth v. Mediote*, 38 Pa.Super. 194, 199 (1909); 2 Henry,

Pennsylvania Evidence, § 808 (4th ed. 1953). Where, as here, the Commonwealth has produced credible evidence tending to contradict the testimony of one of its witnesses, it would be unjust to deny the jury an opportunity to consider and evaluate all of the evidence for it is well-settled that a jury can believe all or a part of or none of the testimony of any witness. *Commonwealth v. Reid,* 448 Pa. 288, 292, 292 A.2d 297 (1972); *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970), and, *Commonwealth v. Melton,* 406 Pa. 343, 178 A.2d 728 (1962).

We believe the jury could reasonably have concluded the first shot did strike the decedent. Given the location of Miss Shendowich as she observed the direction in which the gun was pointing [2] and her admission that she had not actually seen the gun discharge, we hold the jury could properly have relied upon the other evidence produced by the Commonwealth. However, even assuming the first shot did strike the decedent, we are unable to subscribe to the Commonwealth's view that this "continued" the difficulty. Given the decedent did not pick up the heavy concrete block until after the appellant had fired the first shot, this was not a situation where the original controversy had already terminated. As stated previously, the decedent was the initial perpetrator of the difficulty and had not ceased to be the aggressor. It is evident the first shot was not an act of aggression on the part of the appellant but, rather, was designed to fend off further attack. The fact that the fatal attack was commenced soon after the firing of this shot does not lead to the conclusion that this shot "continued" the difficulty since the decedent, himself, had already chosen to further the controversy. We are not herein presented with the situation where the initial controversy had terminated, followed by a renewal of the altercation with the

---

2. She witnessed the events from a porch which overlooked the apartment parking lot.

original victim having assumed the role of aggressor. See *Commonwealth v. Ware,* supra. While we do not condone the appellant's wounding of the decedent, we hold that one cannot be considered to have "continued" the difficulty when at no time has that person become the aggressor. Cf. *Commonwealth v. Tiernan,* supra, and *Commonwealth v. Searles,* 445 Pa. 240, 285 A.2d 179 (1971).

Therefore, we agree with the appellant that the conviction may not stand as a matter of law. The Commonwealth's own evidence establishes this shooting was committed in self-defense.

The judgment of sentence is reversed and Mahoney is ordered discharged.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice (dissenting).

I am unable to conclude from the record, as does the Court, that the evidence adduced by the Commonwealth demonstrates, *as a matter of law,* that the killing of William Masser by the appellant was done in self-defense. Precedents are not of significant aid in cases such as this since each presents a different and often difficult factual situation; but in my view the present case goes farther than any others decided by this court in finding the elements of self-defense to have been satisfied. I cannot agree that they were. In the hurly-burly of the fight that occurred between Mahoney and Masser only Mahoney, the appellant, employed a gun, and that from the security of his automobile. He shot not only once, but four times, two shots finding their mark in Masser's body, one of them, in his head, proving fatal. The jury could properly find, as it apparently did, that appellant was guilty of continuing the fracas.

For this Court to say that it "does not condone the appellant's *wounding* of the decedent" (emphasis mine) but

that appellant will, nevertheless, stand discharged as having done what he did in self-defense is not only inconsistent, but, on this record, unjustifiable. The resolution of this case was properly left to the jury. See *Commonwealth v. Edwards*, 448 Pa. 79, 292 A.2d 361 (1972); *Commonwealth v. Commander*, 436 Pa. 532, 541, 260 A. 2d 773, 778 (1970). Hence my dissent.