409 A.2d 313

COMMONWEALTH of Pennsylvania

v.

Charles L. McGUIRE, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 22, 1978.

Decided Dec. 21, 1979.

Lester G. Nauhaus, John H. Corbett, Jr., Asst. Public Defenders, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Jacqueline M. Verney, Leo M. Dillon, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

Appellant, Charles McGuire, was charged with murder, voluntary manslaughter, and involuntary manslaughter for the fatal shooting of his seventeen year old son, Darell. On

motion of the prosecution the court dismissed the charge of involuntary manslaughter. Appellant was tried without a jury and found guilty of murder in the third degree. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of not less than three nor more than seven years. A direct appeal followed.[1]

On March 12, 1976, however, we entered a judgment of *non pros* because appellant took no further action in his appeal. Appellant then filed a post-conviction petition alleging denial of his appeal rights because appellant had been abandoned by his privately retained counsel for "inability or neglect" to pay his counsel fees and that he was then denied the services of the Public Defender. Pursuant to this petition, the trial court entered an order allowing appellant a direct appeal to this Court *nunc pro tunc* from the trial court's judgment of sentence. This appeal followed in which appellant raises only one issue: a challenge to the sufficiency of the evidence.

The incident, resulting in Darell McGuire's death, occurred at approximately 2:00 a. m., on June 2, 1974, at the McGuire residence. The witnesses testified at trial that on this date, shortly after 1:00 a. m., that Darell, age seventeen, began to argue with his mother, Mrs. Charles McGuire. When Darell began cursing his mother, appellant, Darell's father, came downstairs and told him not to talk to his mother in that manner. Darell then hit appellant, causing his head to go through a glass table. Mrs. McGuire instructed her daughter to call the police, told Darell to leave the house and locked the door. However, Darell kicked the door in and re-entered the house. Again, Mrs. McGuire told Darell to leave the house and once again Darell regained entry. This time, he entered by climbing through a window which he broke with a door mat.

Darell then started a rampage throughout the house. After throwing objects around on the first level, Darell went into the third level bedroom occupied by his mother and

---

1. Because of the death of Mr. Justice Manderino, this matter was reassigned to this writer on November 9, 1979.

appellant and began hitting and swinging at appellant with a lamp. Darell hit Mrs. McGuire, threw her down on the bed, and hit appellant with the lamp. Darell then ran upstairs to the fourth level bedroom where Mrs. McGuire had fled and tried to force open the door which Mrs. McGuire was holding closed from within. Inside the bedroom with Mrs. McGuire were appellant's daughter, Toni McGuire, appellant's stepdaughters, Pamela and Denise, and Denise's baby.[2]

While Darell continued to push on the door, curse, and threaten to kill everybody, appellant went to his third level bedroom closet, took out a .25 caliber automatic handgun, and walked back to the bedroom doorway. Appellant unsuccessfully pleaded with Darell to stop, and Darell threw some billiard balls at him. Appellant then fired a single shot, fatally wounding Darell in the back.

In contradistinction to the witnesses' trial testimony, in a statement given to the police at the time of his arrest, appellant stated that his wife was in the third level bedroom at the time of the shooting. He further stated that the deceased was standing on the fourth level near the bedroom door and was hurling objects at him and his wife. According to the statement, the deceased continued to curse them and threaten their lives. The court below, in reaching its decision, accepted the statement version as to the whereabouts of Mrs. McGuire at the time of the shooting.

In his sufficiency of evidence claim, appellant argues that the evidence presented did not establish the charge of murder and that this Court should dismiss the charges and discharge the defendant because the killing was a justifiable one. Although appellant would have us treat this argument as a single proposition, it does in fact raise two distinct questions. First, whether the testimony provided a basis for finding a malicious killing beyond a reasonable doubt. Second, whether the testimony provided a basis for finding

2. Appellant's household at the time of this incident consisted of his wife, his son Darell and daughter Toni, two stepdaughters, Pamela and Denise, and Denise's baby.

that the killing was not justifiable beyond a reasonable doubt. We cannot agree with the ultimate proposition that the evidence establishes a justifiable killing as a matter of law, but we are in agreement with the first part of the contention that a malicious killing was not established. We, therefore, reverse the judgment of sentence and award a new trial for the reasons that follow.

We will first consider the question as to whether the evidence can sustain a finding of a malicious killing and then turn to the other aspect of this case, to wit, whether the Commonwealth overcame the contention that the killing was a justifiable one.

It is beyond cavil that an accused in a criminal case is clothed with a presumption of innocence and that the burden of proof in establishing guilt rests with the Commonwealth. The quantum of proof necessary to satisfy this burden, which never shifts from the Commonwealth to the accused, is such that the fact-finder must be convinced beyond a reasonable doubt of the defendant's guilt. *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959). We have often stated that this identical burden extends to every material element of the crime charged and that if the Commonwealth fails to carry this burden beyond a reasonable doubt *as to any one element*, the accused must be acquitted. *Commonwealth v. Young*, 456 Pa. 102, 111, 317 A.2d 258, 262 (1974); *Commonwealth v. Roscioli*, 454 Pa. 59, 62, 309 A.2d 396, 398 (1973); *Commonwealth v. Conklin*, 399 Pa. 512, 515, 160 A.2d 566, 568 (1960). *See also In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

*Commonwealth v. Bishop*, 472 Pa. 485, 489–90, 372 A.2d 794, 796 (1977).

Under the new Crimes Code, 18 Pa.C.S.A. § 101, et seq. (Supp.1978–79), the offense of third degree murder incorporates common law malice as an element. 18 Pa.C.S.A. §§ 2501, 2502(c) (Supp.1978–79). In this jurisdiction we have

adhered to the traditional definition of malice that was set forth in *Commonwealth v. Drum*, 58 Pa. 9 (1868).

> Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

*Commonwealth v. Drum, supra,* 58 Pa. at 15. *See also Commonwealth v. Hilbert,* 476 Pa. 288, 382 A.2d 724 (1978); *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977). *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Thomas,* 382 Pa. 639, 117 A.2d 204 (1955).

██ A review of the evidence presented discloses an absence of the callous disregard and the recklessness of consequences required to find that the killing was a malicious one. *See Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975). Moreover, the Commonwealth's reliance upon an inference of malice from the fact of the shooting is misplaced under the facts of this case. *See Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975).

> The Commonwealth attempted to justify the verdict of relying on the inference of malice that normally may be drawn from the fact that a deadly weapon has been used upon a vital part of the body. While this inference is well recognized in our law *it will not be permitted to support a finding of malice where the direct evidence presented in the Commonwealth's case proves the contrary.* (Emphasis added).

*Commonwealth v. Caye, supra,* 465 Pa. at 101, 348 A.2d at 137.

It is not disputed that appellant shot the victim and caused his death. It is also not disputed that the deceased exhibited an intention to inflict serious bodily injury to the

person of the appellant and/or other members of the household during the incident which lead to the death. The question raised is whether the act was inspired by malice. In this case, the inference of malice that would normally arise from the appellant's use of a deadly weapon upon a vital part of the body of the deceased, absent further explanation, is clearly negated by the other evidence presented in this case by the Commonwealth. *Commonwealth v. Caye, supra.*

The testimony offered by the Commonwealth established the belligerent and pugnacious disposition of Darell (the deceased). One or two weeks before the shooting, Darell had struck his sister, Denise, five or six times about the head causing injury. In May, 1974, Darell had punched his sister, Pamela, causing a laceration of her lip which required medical attention. In June of 1974, Darell had struck appellant which resulted in appellant's hospitalization, under intensive care, for a period of one week. During the incident that lead to his death, Darell had assaulted his mother, appellant, and repeatedly threatened, "I'm going to kill all you m. . . . . f. . . . ., I'm going to kill all of you."

Unquestionably, Darell McGuire was the provoker and the aggressor. Mrs. Gale Porter, the McGuire's neighbor, on direct examination testified that Darell broke the glass window and entered the home through the window. Mrs. Porter also saw Darell struggling with Mr. and Mrs. McGuire on the third floor of the residence. This prosecution witness also testified that she observed and heard Darell running rampant throughout the house on a course of physical destruction. Mrs. Porter heard appellant tell Darell to stop his rampage. Another prosecution witness said that appellant pleaded with Darell five or six times to stop his rampage. When Darell initially hit appellant, he fell through a glass table. His eye cut, he retreated upstairs to the bedroom. Downstairs, Mrs. McGuire and Darell were still arguing and Darell left the house. The doors were then locked behind him. Darell then broke the glass window, re-entered the house and renewed his attack. Appellant told

Darell: "Be like a man, and just leave the house right now." Darell responded by swinging the lamp at appellant and by throwing appellant's wife on the bed. Darell then hollered throughout the house, "There ain't nobody going to be alive but me." Toni, Darell's younger sister, heard the threat, jumped out of the window and ran "because he [Darell] was going to come up there and kill us." These undisputed facts negated any possible inference of malice that may have been suggested by appellant's firing the weapon at a vital part of Darell's body. *Commonwealth v. Caye, supra.*

The Commonwealth correctly states that although some of the evidence it introduced may have been supportive of the defense's version of the facts, it may nevertheless establish it's version of the facts from other competent evidence. *Commonwealth v. Mahoney,* 460 Pa. 201, 331 A.2d 488 (1975). *See also Commonwealth v. Duncan,* 473 Pa. 62, 373 A.2d 1051 (1977); *Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Gonzales,* 463 Pa. 597, 345 A.2d 691 (1975). The weakness of this contention is that the Commonwealth did not offer any evidence, from any source, which would have proved the element of malice beyond a reasonable doubt. The Commonwealth relies upon portions of a statement given to the police by the appellant at the time of his arrest. It is argued that this statement proves that appellant's act was not compelled by a fear for personal safety or for the safety of the other members of his household. Under the most favorable reading for the Commonwealth, the statement suggests only that appellant may have acted out of anger and rage.[3] This, therefore, would not support a finding of murder of the third degree but rather voluntary manslaughter since the record amply sup-

---

**3.** The Commonwealth also points to that part of the statement where Mr. McGuire described getting his gun and loading it. This reference was to demonstrate deliberate conduct as opposed to an action influenced by passion. However, the statement further states that appellant did not immediately use the weapon after securing it, but rather, he continued to attempt to persuade the victim to stop the violent conduct. It was only after his attempts to calm the victim resulted in a continuation of the violence directed at him and his wife that the single shot was fired.

ported the presence of legal provocation. *See e. g. Commonwealth v. Berry*, 461 Pa. 233, 336 A.2d 262 (1975); *Commonwealth v. Long*, 460 Pa. 461, 333 A.2d 865 (1975). As has been repeatedly stated, murder is distinguished from the lesser degrees of homicide because of the presence of malice. *See Commonwealth v. Culmer*, 463 Pa. 189, 344 A.2d 487 (1975); *Commonwealth v. Parker*, 458 Pa. 381, 327 A.2d 128 (1974); *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972); *Commonwealth v. Simpson*, 436 Pa. 459, 260 A.2d 751 (1970); *Commonwealth v. Chermansky*, 430 Pa. 170, 242 A.2d 237 (1968). Here, that element was missing and a verdict of murder of the third degree may not be permitted to stand.

Although we must sustain the appellant's contention that the evidence is insufficient to support a verdict of murder of the third degree, we do not agree that a verdict of voluntary manslaughter could not have been sustained on the record before us. As stated, the evidence did not provide a basis for a finding of malice, which precludes a verdict of any degree of murder, however, there was testimony that would support the finding that the killing was a felonious one and not justifiable.

 Justification as a statutory defense is set forth in 18 Pa. C.S.A. § 501 *et seq.* Section 505(a) provides:

The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

Where deadly force is used, section 505(b)(2) provides in pertinent part:

The use of deadly force is not justified under this section *unless the actor believes that such force is necessary to protect himself against death, serious bodily injury . .* (Emphasis added)

The requirement of the defense available for the protection of others is set forth in section 506(a) which provides:

The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 of this title (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.[4]

The words "believes" or "belief" when used in this chapter are to be interpreted as meaning "*reasonably* believes" or "*reasonable* belief." 18 Pa. C.S.A. § 501. Therefore, the use

---

4. We summarized the law of the defense of others in our decision in *Commonwealth v. Jackson*, 467 Pa. 183, 189–190, 355 A.2d 572, 575 (1976).

> As a general proposition, a person is justified or excused in killing in defense of another person when, and only when, the circumstances are such that the latter person would be justified or excused if he had committed the homicide in his own defense. A person interfering in a difficulty in behalf of another simply steps into the latter's shoes; he may lawfully do in another's defense what such other might lawfully do in his own defense but no more; he stands on the same plane, is entitled to the same rights, and is subject to the same conditions, limitations, and responsibilities as the person defended; and his act must receive the same construction as the act of the person defended would receive if the homicide had been committed by him . . . [i]n general it is necessary and sufficient to justify or excuse a homicide in defense of another that neither the person defended nor the defender shall be at fault in [provoking] the difficulty, . . . that the danger, real or apparent, to the person defended shall be of death, great bodily harm, or a felony; that it shall be present, imminent and impending, and not a past danger; that either the person defended shall be in real danger of death, great bodily harm, or some felony at the time, or it shall be reasonably apparent to the slayer, or he shall honestly and reasonably believe, that the person defended is in such danger, and that it is necessary to kill to save him therefrom; that the person defended shall retreat if he can do so without increasing his peril; that neither the person defended or accused could have averted the apparent danger by any reasonably safe means other than the killing of deceased; and that the defender shall not use more force than is necessary or reasonably appears to him to be necessary to save the person defended from death or great bodily harm. 40 C.J.S. Homicide, § 108 at 968–69 (1944).

of deadly force in the defense of self or another cannot be justified unless the actor *reasonably believes* that such force is necessary to avoid death or serious bodily harm. *See e.g. Commonwealth v. Eberle*, 474 Pa. 548, 379 A.2d 90 (1977); *Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970).

█ If the sequence of events as described by the witnesses at trial represented the only evidence to be considered by the factfinder, the position of the appellant would be compelling. *See e. g. Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977); *Commonwealth v. Walley*, 466 Pa. 363, 353 A.2d 396 (1976); *Commonwealth v. Daniels*, 451 Pa. 163, 301 A.2d 841 (1973). This testimony indicated that immediately before the shooting, in response to threats upon her life and the life of her children, Mrs. McGuire fled to a bedroom on the fourth level where she and her daughters were attempting to barricade the door against Darell's forcible entry. It was contended that the fatal shot was fired by the appellant, who was standing on the third level, to prevent Darell from gaining entrance and grievously assaulting the occupants of the fourth level bedroom. We would agree that if this was the only evidence upon which the judgment was to be rendered, a compelling argument could be made for the discharge of the accused as a matter of law. *See e. g. Commonwealth v. Mahoney*, 460 Pa. 201, 331 A.2d 488 (1975).

However, a statement given by appellant at the time of his arrest and introduced against him at trial provided another dimension to the factual question. In that account of the events, appellant stated that his wife was in the bedroom on the *third* level when the shooting occurred. Moreover, that statement made no mention as to whether anyone else, other than the victim, was on the fourth level at the time, or that Darell was attempting to force his way into a room on that level.[5]

5. The following excerpts are taken from the statement given by appellant at the time of arrest:

Q. Did he leave you alone when you asked him, you told him that you didn't want him hitting you with those karate chops. Did he stop?

Presented with this second version, a finder of fact clearly had a basis for concluding that the killing was voluntary manslaughter.[6]

A. No, he stopped in a way of speaking, but he went, he went up on the fourth level and . . .

Q. But he stopped hitting you with the karate chops?

A. Yeah, cause I was, I was hitting him a little bit myself. I don't know too much about them but I was trying to defend myself.

Q. Okay.

A. And ah, he started throwing something down from the fourth level. And he started calling his mother out of the worstess names I ever heard him call his mother.

\* \* \* \* \* \*

A. He was throwing something downstairs at the wife and I pushed her aside.

Q. How. What do you mean downstairs?

A. He was on the fourth level . . .

Q. Where was she standing at?

A. She was standing in the bedroom door.

Q. And you were still in there getting your gun loading it?

A. By that time, ah, I had already moved over to where she was at.

Q. Okay. And then what happened?

A. I said, "Darrell, act sensible." I said, "Be sensible. Your mother's not trying to hurt you or anything." And he started acting belligerent again and he threw something at me. That's when I cocked it and shot one time.

Q. Un huh. Where was you standing at?

A. I was standing in the bedroom door.

Q. Where was your wife standing at?

A. I pushed her on the bed.

\* \* \* \* \* \*

Q. Well, why . . . what made you want to shove her?

A. Because I was . . . didn't want her to get hurt and she did. And at the same time, it was dark coming down from those stairways and she couldn't see if she was gonna get hit with something or not.

\* \* \* \* \* \*

Q. And where was Darrell at?

A. Darrell was standing approximately six inches from the fourth level first bedroom floor.

Q. Okay now. You came out of your bedroom, you're standing in your doorway, you have to climb steps to get to the fourth level?

A. I don't have to. Yes, I have . . . I would have to. Yes.

Q. Yes. And Darrell was standing on the top of those steps?

A. Yes.

Q. Okay and you fired one shot?

A. I fired one shot.

6. We have previously mentioned that the Commonwealth has called attention to portions of the statements that might also reflect a killing in passion.

Under the statement version, the only threat posed to appellant or his wife by Darell, while he remained at the fourth level, was the possibility of their being struck by one of the objects he was throwing. There was nothing to indicate that Darell was about to descend the stairs. Appellant's statements during police interrogation seemed to suggest that the interior of the third level bedroom may have provided refuge from any of the objects hurled from above. Since the victim's attack was directed to occupants of the third level and not the fourth level, the entry of the bullet in the back of the victim gains significance. The distance between the parties would tend to indicate the appellant may have had an opportunity to warn Darell of his intention to shoot before doing so, without exposing himself or his wife to further danger.

We are not suggesting that a factfinder could not reach a conclusion of a justifiable killing having once found the statement version to be the most creditable. Our position is that the version set forth in the statement raises a jury question as to whether appellant could have reasonably believed that the force used was necessary at that moment to protect himself and his wife. *See Commonwealth v. Jackson,* 467 Pa. 183, 355 A.2d 572 (1976); *Commonwealth v. Daniels, supra.*

In summary, having concluded the Commonwealth has failed to establish a malicious killing beyond a reasonable doubt, we must sustain appellant's claim as to the sufficiency of the evidence to support a verdict of murder of the third degree. Further, we have concluded for the reasons stated that there was evidence which, if believed, would support a finding of voluntary manslaughter. We, therefore, cannot accede to appellant's further request that we rule as a matter of law that the killing was justifiable and enter an order discharging the defendant. The evidence raises a question that is properly within the province of a

finder of fact. It is their responsibility to determine whether the killing in this case was justifiable or whether it constituted voluntary manslaughter.[7]

Accordingly, we reverse the judgment of sentence and discharge the appellant as to the count charging murder of the third degree and remand the cause for a new trial on the voluntary manslaughter charge.

MANDERINO and POMEROY, JJ., did not participate in the decision of this case.

EAGEN, C. J., concurs in the result.

ROBERTS, J., files a dissenting opinion.

LARSEN, J., files a dissenting opinion.

ROBERTS, Justice, dissenting.

I dissent. There is no dispute that appellant Charles L. McGuire shot the victim in the back and caused his death. It is well established that a fact finder may infer malice from the use of a deadly weapon upon a vital part of the body. E. g., *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). Reading all the evidence of this case in the light most favorable to the Commonwealth, *Commonwealth v. Ford*, 472 Pa. 542, 372 A.2d 821 (1977), I must conclude that the evidence was sufficient to sustain the judge's finding of malice.

7. It would not be appropriate for us to attempt to enter a verdict of voluntary manslaughter. This Court has previously indicated an unwillingness to usurp a jury's function by entering a verdict for a lesser degree of homicide after a determination that the evidence did not sustain the degree found by the factfinder. *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979).

LARSEN, Justice, dissenting.

I dissent. I disagree with the Majority's conclusion that a verdict of voluntary manslaughter can be sustained on the record.

A review of the record indicates that immediately prior to his death, the victim conducted a reign of destruction and terror throughout his house, assaulted appellant (his father) and his mother, and threatened to kill all of the individuals who were in the house. When, during his siege of the house, the victim tried to force open the door to the room on the fourth level of the house where some members of his family were located, appellant fired the fatal shot at the victim in order to protect his family from the victim. Clearly, appellant's slaying of the victim constituted justifiable homicide.

Notwithstanding the victim's violent and threatening conduct, the Majority concludes that appellant's slaying of the victim could constitute voluntary manslaughter. The *only* evidence which the Majority cites to support such a finding is a statement given by appellant to the police wherein (according to the Majority) "appellant stated, that his wife was in the bedroom on the third level when the shooting occurred. . . . [T]hat statement made no mention as to whether anyone else, other than the victim, was on the fourth level at the time, or that Darell [the victim] was attempting to force his way into a room on that level." The Majority attaches unwarranted significance to this statement—in fact, the statement adds nothing to the Commonwealth's case. Even if appellant's wife was in the third level bedroom (and not on the fourth level) when the shooting occurred, the fact remains that other members of appellant's family were under attack on the fourth level at the time of the shooting. The Commonwealth's evidence minimally establishes that there were family members under attack by the victim on the fourth floor—appellant's statement is not contra to this.

Thus, appellant's slaying of the victim was justifiable; appellant should be discharged.