560 A.2d 786

COMMONWEALTH of Pennsylvania

v.

TAU KAPPA EPSILON, Appellant.

COMMONWEALTH of Pennsylvania

v.

THETA DELTA CHI, Appellant.

COMMONWEALTH of Pennsylvania

v.

ALPHA EPSILON PI, Appellant.

COMMONWEALTH of Pennsylvania

v.

ALPHA CHI RHO, Appellant.

COMMONWEALTH of Pennsylvania

v.

BETA SIGMA BETA, Appellant.

COMMONWEALTH of Pennsylvania

v.

PHI MU DELTA, Appellant.

COMMONWEALTH of Pennsylvania

v.

PHI KAPPA THETA, Appellant.

COMMONWEALTH of Pennsylvania

v.

PI KAPPA ALPHA, Appellant.

COMMONWEALTH of Pennsylvania

v.

PHI KAPPA TAU, Appellant.

COMMONWEALTH of Pennsylvania

v.

SIGMA PI, Appellant.

COMMONWEALTH of Pennsylvania

v.

ACACIA, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 2, 1989.

Filed June 16, 1989.

Edward S. Blanarik, Jr., Ambridge, for appellants.

Mark S. Smith, Assistant District Attorney, Bellefonte, for Com., appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge:

The appellants are eleven fraternities at Penn State University.[1] They were tried by a jury and were found guilty of furnishing beer to minors in violation of section 493(1) of

---

[1]. Specifically, appellants are Tau Kappa Epsilon, Theta Delta Chi, Alpha Epsilon Pi, Alpha Chi Rho, Beta Sigma Beta, Phi Mu Delta, Phi Kappa Theta, Phi Kappa Alpha, Phi Kappa Tau, Sigma Pi, and Acacia. A twelfth fraternity, Sigma Phi Epsilon, was acquitted.

the Liquor Code, Act of April 12, 1951, P.L. 90, art. IV, § 493, as reenacted and amended by the Act of June 29, 1987, P.L. 32, No. 14, § 81, 47 P.S. § 4–493(1).[2] Post-trial motions were dismissed. Thereafter, Tau Kappa Epsilon was sentenced to pay a fine of five hundred ($500) dollars, to perform two hundred (200) hours of charitable service, and was placed on probation for a period of one year. The remaining ten fraternities were sentenced to one year of probation, to pay a fine of two hundred ($200) dollars, and to perform fifty (50) hours of charitable service. On direct appeal from the judgments of sentence, appellants argue (1) that the Commonwealth failed to prove that the beverages served to minors were beer; (2) that the entries by police into the fraternity houses were illegal and that evidence obtained as a result thereof should have been suppressed; and (3) that the trial court should have granted a mistrial because of statements made by the prosecuting attorney during closing argument to the jury. We find no basis for disturbing the jury's verdicts and affirm the judgments of sentence.

As part of a general investigation, Laurie Hazenstab and Ann Henry, members of the State College Bureau of Police Services, made visits to off-campus fraternity houses during October and November, 1986, to determine whether alcoholic beverages were being furnished to minors. While dressed in street clothes they would enter randomly selected fraternity houses at which social functions appeared to be underway. During the course of the investigation they entered twelve fraternity houses, gaining admission by showing an expired Penn State identification card or sign-

2. This section provides that it is unlawful:

(1) For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits.

47 P.S. § 4–493(1).

ing a register.[3] At several houses, admissions were wholly unrestricted. When inside, the officers' practice was to move toward the bar, where they were served a beverage which looked and tasted like beer and was served from a tap in plastic cups of a type furnished by distributors. Hazenstab and Henry then observed the persons who were being served at the bar. When they observed someone who appeared to be underage; they would keep that person under surveillance until he or she left the fraternity house. One of the officers would then follow, and the other would signal uniformed officers who were waiting outside the house. The suspected minor was then stopped and asked for identification and age. Several minors were convicted or entered pleas of guilty to underage drinking as a result of the investigation, and charges were brought against the twelve fraternities for furnishing beer to minors.

■■■■ In determining the sufficiency of the evidence to support a finding that the beverages supplied to the minors were beer,[4] we apply the general standard of review and decide

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). See also: *Commonwealth v. Sabharwal,* 373 Pa.Super. 241, 243, 540 A.2d 957, 958 (1988); *Commonwealth v. Quarles,* 361 Pa.Super. 272, 280–281, 522 A.2d

3. Officers Hazenstab and Henry were former Penn State students and displayed expired identification cards when identification was requested.

4. Beer is defined in the Liquor Code as follows:

> **"Malt or Brewed Beverages"** means any beer, lager beer, ale, porter or similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called.

Act of April 12, 1951, P.L. 90, art. I, § 102, as reenacted and amended by the Act of June 29, 1987, P.L. 32, No. 14, § 4, 47 P.S. § 1–102.

579, 583 (1987); *Commonwealth v. Morton,* 355 Pa.Super. 183, 184, 512 A.2d 1273, 1274 (1986).

Appellants rely on *Commonwealth v. Erney,* 212 Pa.Super. 174, 239 A.2d 818 (1968), where the Superior Court held that testimony alone of minors that they had been served beer was insufficient to support a conviction under this section. The Court reasoned as follows:

> Article IV, § 493(1) of the Liquor Code, Act of April 12, 1951, P.L. 90, Art. IV, § 493, as amended, 47 P.S. § 4–493(1), provides that it shall be unlawful "for any * * person to * * * furnish or give any * * * malt or brewed beverages * * * or to permit any * * * malt or brewed beverages to be * * * furnished or given * * * to any minor * * *."

> Article I, § 102, defines "malt or brewed beverages" as "any beer, lager beer, ale, porter or similar fermented malt beverage **containing one-half of one per centum or more of alcohol by volume,** by whatever name such beverage may be called." (Emphasis added.)

> The Commonwealth made no effort to prove that the beverage was a "malt or brewed beverage" as defined in the Code, apparently being content to rest on statements by the minors involved that they were served "beer" and that they saw "beer" being served to others.

*Id.,* 212 Pa.Superior Ct. at 176, 239 A.2d at 818–819. But see: *Appeal of Charsuner Bar Corp.,* 68 Pa.Cmwlth. 382, 449 A.2d 106 (1982) (in proceeding to suspend liquor license, testimony of minors that they were served beer, daiquiris and kaluha and cream was sufficient to support finding that licensee served alcoholic beverages to minors in violation of § 493(1) of Liquor Code). Appellants contend, therefore, that the Commonwealth's evidence was inadequate to establish that the "beer" which they served to minors contained at least one-half of one percent of alcohol by volume.

In this case, however, the Commonwealth did not rely solely on the testimony of the minors. In addition to their testimony that they asked for beer, Officer Hazenstab, who had been served the same beverage, testified that the

beverages served by appellants looked and tasted like beer and, in her opinion, were beer. Specifically, Officer Hazenstab testified as follows:

Q Now what would you do with your particular glass of beverage?

A After we observed the—what we suspected of being minors—Officer Henry and I would approach the bar and ask for a beer. We would be served, and—

Q Did it come out of the same tap as the beer that was served to the minor?

A Yes.

Q Do you want to continue.

A We would request a beer, which we would be served. And we would take a few tastes of it and see what—make sure it was beer.

We would then somewhat follow the suspected minor in the fraternity to—we always maintained an eye shot of the individual. And basically waited until they were ready to leave.

Q Now, just for the sake of detail, would you describe what kind of beverage was coming out of the tap system? What color was it? What did it—

A Okay. I would describe beer as an amber color, light amber color. When poured from a tap system, it produces a white foam on the top of the liquid, on the top of the cup. And they used the almost clear plastic cups that beer distributers [sic] give out whenever a keg is purchased at the distributer [sic]. You can see the liquid in the cup.

Q Have you drank beer before?

A Yes, I have.

Q Roughly over the last few years, you drank beer?

A Yes.

Q And are you familiar with the taste of beer?

A Yes, I am.

Q And what kind of beer would that be? It is near beer or what they call three/two beer or full strength? What kind of beer would you drink?

A The regular type of beer, which isn't the—I never tasted the three/two beer.

Q You are saying—

A The full strength.

Q And the liquid that you would taste at the fraternities, what did that liquid taste like to you?

A It tasted like what I had tasted in the past as beer.

The witness had tasted beer in the past and was familiar with the taste of beer. She described the appearance and taste of the beverages served by appellants and said that in her opinion they were beer. This was sufficient under the circumstances of this case to establish that the substances being furnished to the minors were also beer. Cf. *In re Steerman's Liquor License*, 185 Pa.Super. 214, 138 A.2d 292 (1958) (testimony of police officers that patrons had been served beer established violation of § 493(1) for serving visibly intoxicated persons in a license suspension proceeding); *Commonwealth v. Mazarella*, 86 Pa.Super. 382 (1926) (in prosecution for possession of intoxicating liquor during prohibition, testimony of two witnesses describing liquid found in defendant's possession as whiskey was sufficient proof that defendant possessed intoxicating liquor). We find no support in the decided cases for appellants' contention that the Commonwealth was required to perform a chemical test to establish the exact alcohol content of the beverages which appellants served to minors. See: *In re Steerman's Liquor License, supra* (in proceeding for suspension of liquor license for serving visibly intoxicated persons, a chemical analysis is not required in order to prove beverage was intoxicating beverage); *Appeal of Charsuner Bar Corp., supra* (in proceeding to suspend liquor license for serving minors, Commonwealth not required to offer proof of exact alcoholic content of beverages served in order to meet burden of showing service of alcoholic beverages); *Commonwealth v. Zoeller*, 15 Adams L.J. 138 (1973) (in prosecution for selling liquor without license, chemical test of alcoholic content of beverages sold not required). We conclude, therefore, that the Common-

wealth's evidence was sufficient to support the jury's finding that appellants served malt or brewed beverages to minors in violation of section 493(1) of the Liquor Code.

■ The trial court held that the entries made by Officers Hazenstab and Henry were consensual and did not violate the fraternities' reasonable expectations of privacy. Although several witnesses said that fraternity parties were private, the ease with which the police officers gained admission belied any expectation of privacy and suggested, rather, that their entrances had been consensual. The observations made thereafter were of events within plain view.

In reviewing the order refusing to suppress the officers' observations, we

> determine whether the factual findings of the lower court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge,* 305 Pa.Super. 386, 451 A.2d 701 (1982).

*Commonwealth v. Chamberlain,* 332 Pa.Super. 108, 112, 480 A.2d 1209, 1211 (1984). See also: *Commonwealth v. Kichline,* 468 Pa. 265, 279, 361 A.2d 282, 290 (1976); *Commonwealth v. Stark,* 363 Pa.Super. 356, 365, 526 A.2d 383, 388 (1987); *Commonwealth v. DiNicola,* 348 Pa.Super. 405, 409, 502 A.2d 606, 608 (1985).

Our review of the suppression hearing discloses competent evidence to support the court's finding that the entries of Officers Hazenstab and Henry were consensual. The court's application of the law thereto was without error.

In *Commonwealth v. Weimer,* 262 Pa.Super. 69, 396 A.2d 649 (1978), state troopers had gained admission to a private club by ringing a doorbell and being admitted. Although they were questioned at the bar regarding their member-

ship, they were allowed to order and were served drinks. While there, they observed gambling activities which resulted in arrests and prosecution. The Superior Court observed that "opening the door with little regard to the identity of the entrants constitute[d] a clear invitation." *Id.*, 262 Pa. Superior Ct. at 78, 396 A.2d at 653 (footnote omitted). Having permitted entrance, the club had no reasonable expectation that the troopers would not observe the activities then being conducted in plain view on the inside. See also: *Commonwealth v. Sweeper*, 304 Pa.Super. 537, 450 A.2d 1368 (1982); *Commonwealth v. Ginter*, 289 Pa.Super. 9, 432 A.2d 1024 (1981); *Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378 (1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *Commonwealth v. Busfield*, 242 Pa.Super. 194, 363 A.2d 1227 (1976); *Commonwealth v. 9 Mills Mechanical Slot Machines*, 62 Pa. Cmwlth. 397, 437 A.2d 67 (1981).

The decision in *Commonwealth v. Black*, 365 Pa.Super. 502, 530 A.2d 423 (1987), is not apposite. In that case, the right of privacy was premised upon the fact that to gain entrance to the club, one had to enter a vestibule, ring a buzzer, and display membership identification to a doorman. In the instant case, security was so lax as to be virtually non-existent; a person could enter and be furnished beverages almost at will. Under these circumstances, the fraternities could be found to have consented to the entry of Officers Hazenstab and Henry and to have surrendered any reasonable expectation of privacy with respect to the events occurring in their houses.

██ Officer Hazenstab testified that her investigation had been prompted by complaints about fraternities in State College involving vandalism and automobile accidents, including a fatal accident involving persons who had been drinking at a fraternity. No objection was made to this testimony. During closing argument, the prosecuting attorney referred to the police investigation and to the testimony about the circumstances which prompted it. Appellants contend that this was improper and that the trial court

erred when it denied a defense motion for a mistrial made at the conclusion of the prosecuting attorney's remarks.[5]

The trial judge, who was present and heard counsel's remarks, determined that the reference had been based on evidence received and was not harmful. Therefore, he denied the motion for mistrial. We find no abuse of the trial court's discretion. "[C]omments by a prosecutor do not constitute reversible error unless the 'unavoidable effect of such comments [is] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant[s] so that they could not weigh the evidence objectively and render a true verdict.'" *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531, 536 (1986), quoting *Commonwealth v. Anderson*, 501 Pa. 275, 282, 461 A.2d 208, 211 (1983). When the remarks of the prosecuting attorney are evaluated in the context in which they occurred, the trial court could conclude, as it did, that appellants were not unfairly prejudiced.

The judgments of sentence are affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent from the majority's opinion that the evidence was sufficient to support a finding that the beverage

5. The motion of defense counsel and the response of the prosecuting attorney were as follows:

MR. BLANARIK: I object to Mr. Smith's comments during his closing regarding the vehicular homicide and the fact that there was a death directly related to the fraternities. There was no evidence of that. As the Court is well aware, a question by an attorney is not evidence. It's the answer to the question. There was a question, but I believe the answer was I don't know or I wasn't sure.

I believe that in this case there was no evidence to submit that. It was used purely to inflame the passions of the jury in this particular case and by virtue of that, is prosecutorial misconduct. On that basis, I would move for a mistrial.

MR. SMITH: Your Honor, there was testimony by Laurie Hazenstab why this investigation was conducted. She said among other things—she talked about the State College residents' complaint. She also talked about the fact there had been a vehicular homicide where the driver had been drinking at the fraternity. That is where I am pulling that from to use it in my closing.

THE COURT: Denied.

supplied to the minors was beer. Rather, I would find that the evidence presented by the Commonwealth was insufficient to sustain the fraternities' convictions on the charges of furnishing beer to minors. 47 Pa.S.A. § 4–493(1).

As a result of the instant investigation, several minors were convicted of or entered guilty pleas to underage drinking. At trial, the investigating officers testified that they asked for beer. Officer Hazenstab further testified that she was served a beverage which looked and tasted like beer, and, in her opinion, was beer. The majority ruled: "This was sufficient under the circumstances of this case to establish that the substances being furnished to the minors were also beer." Majority Op. at 790. I disagree.

Under the Pennsylvania Liquor Code, "beer" has the following very specific definition:

> **"Malt or Brewed Beverages"** means any beer, lager beer, ale, porter or similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called.

47 Pa.S.A. § 1–102. Definitions.

I equate this case to a criminal action under the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa. S.A. § 780–101 *et seq*, where the Commonwealth is required to establish the chemical make-up of the controlled substance serving as the basis of the crime. *See examples Commonwealth v. Slyman*, 334 Pa.Super. 415, 483 A.2d 519 (1984); *Commonwealth v. Arenella*, 306 Pa.Super. 119, 452 A.2d 243 (1982); *Commonwealth v. Albert*, 264 Pa.Super. 390, 399 A.2d 1106 (1979). I am convinced that the chemical identity of the beer, as specifically defined by statute, is an element of the crime of serving beer to minors, just as the chemical identity of marijuana is an element of the crime of unauthorized possession of marijuana. No doubt an experienced police officer knows the smell and appearance of marijuana. However, his testimony alone will not establish that the substance is actually marijuana, rather the Commonwealth must submit a chemical analysis identifying the controlled substance. Likewise, the

Commonwealth must prove beyond a reasonable doubt that the substance they allege to be beer is actually beer.

Presently, the appellants were convicted of serving beer to minors based solely on lay testimony; no chemical analysis was provided. The majority, citing numerous revocation of liquor license cases, opines such testimony was sufficient. However, I remind the majority that those are civil cases, not criminal actions where the proof must be beyond a reasonable doubt. To be sure, the testimony of the officers was relevant to the question of whether the substance served was, in fact, beer. However, such testimony standing alone should not be allowed to sustain this conviction, especially in light of the fact that a sample of the beer easily could have been seized pursuant to a warrant and then analyzed.[1]

Due process requires that the Commonwealth bear the burden of proving beyond a reasonable doubt each element of the crime charged. If the Commonwealth fails to sustain that burden then the accused must be acquitted. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Commonwealth v. McGuire,* 487 Pa. 208, 409 A.2d 313 (1979). I believe that the Commonwealth has failed to sustain this burden since a chemical analysis of the intoxicating liquor was not submitted to the jury. See *Commonwealth v. Erney,* 212 Pa.Super. 174, 239 A.2d 818 (1968) ("The Commonwealth made no effort to prove that the beverage was a "malt or brewed beverage" as defined in the Code, apparently being content to rest on statements by the minors involved that the were served "beer" and that the saw "beer" being served to others.") Accordingly, I

---

1. The sole criminal appellate decision cited by the majority is *Commonwealth v. Marabella,* 86 Pa.Super. 382 (1926). First, I note this Prohibition case is sixty-three years of age. Second, although no chemical analysis of the liquor was proffered, the court found the evidence was sufficient based on lay testimony of two witnesses *and* a sample of the contraband whiskey that was available for the jury's examination. However, instantly, only lay testimony was presented; no sample of beer was preserved, analyzed or presented to the jury for their examination.

260

would reverse the lower court's denial of the appellants' motions in arrest of judgment.