609 A.2d 791

COMMONWEALTH of Pennsylvania, Appellee,

v.

TAU KAPPA EPSILON, et al., Appellants.

Supreme Court of Pennsylvania.

Argued May 10, 1991.

Decided May 20, 1992.

generally", indicates to me a measure of discretion that belies the absolutist view espoused by the majority.

Edward S. Blanarik, Jr., State College, for appellants.

Mark S. Smith, Deputy Dist. Atty., for appellee.

NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This is the appeal of eleven fraternities at Pennsylvania State University from the Superior Court order affirming the judgments of sentence entered following convictions for furnishing beer to minors in violation of Section 493(1) of the Liquor Code, 47 P.S. § 4–493(1). The Appellants challenge the judgments of sentence on the basis that the Commonwealth had failed to prove beyond a reasonable doubt that the beverages served were of the type prohibited by the statute.[1] We find that the Commonwealth did not present sufficient evidence to sustain the convictions and now reverse.

In October and November, 1986, Laurie Hazenstab and Ann Henry, members of the State College Bureau of Police Services, conducted an investigation of off-campus fraternity houses to ascertain whether alcoholic beverages were being served to minors. The plain-clothes investigators would enter randomly selected fraternity houses at which parties were being held. As former university students, the investigators had expired identification cards that they displayed at those fraternities restricting admission. Admissions were unrestricted at several fraternities.

Once inside, the investigators would approach the bar to obtain a beverage. When the investigators were served a beverage that had the appearance and taste of beer, they would observe the individuals who were being served at the bar. An individual who appeared to be under twenty-one would be kept under observation until he or she left the fraternity house.

One of the investigators would then follow, while the other investigator would signal to uniformed police officers who were waiting outside of the fraternity. The individual would be stopped and asked for identification. As a result

---

1. The Appellants have raised an additional issue of whether the investigators' entries into the eleven fraternities was illegal and whether evidence obtained as a result should have been suppressed. We will not address that issue in light of our disposition of the first issue.

of the investigation, several minors were convicted of or entered pleas of guilty to underage drinking. Charges for violations of the Liquor Code were brought against the twelve fraternities for furnishing beer to minors.

Section 493(1) of the Liquor Code provides that it is unlawful:

(1) For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits.

47 P.S. § 4–493(1). "Malt or Brewed Beverages" is defined in the Liquor Code as "any beer, lager beer, ale, porter or similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called." 47 P.S. § 1–102.

■ The standard of review applied to determine whether the evidence introduced at trial is sufficient to sustain a conviction is

whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson*, 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984).

■ The Appellants assert that an essential element of the offense charged is that the beverage served contained one-half of one percent or more of alcohol by volume and that the Commonwealth failed to introduce evidence to establish the alcoholic content of the beverage that was served to the minors. The Commonwealth argues that the testimony of the investigators and of several of the minors

who were present at the fraternities that beer was served was sufficient to sustain the convictions.

No chemical analysis or other evidence establishing the alcoholic content of the beverages was introduced into evidence by the Commonwealth. The Commonwealth's witness, Investigator Hazenstab, testified that she would request a beer at the bars of the fraternity houses and would taste the beverage that was served. The beverages were poured from a tap system. The witness testified that she was familiar with the taste of beer and that the liquids served to her appeared and tasted like beer.

The Superior Court concluded that the testimony of the investigator and the minors was sufficient to establish that the substances furnished to the minors were also beer. *Commonwealth v. Tau Kappa Epsilon,* et al. 385 Pa.Super. 247, 560 A.2d 786 (1989) (Popovich, J. dissenting). The court rejected the Appellants' argument that the Commonwealth was required to perform a chemical test to establish the exact alcoholic content of the beverages served to the minors.

The issue presented is whether the testimony of the investigator and the minors was sufficient to establish the offense of serving malt or brewed beverages to a minor. We hold that the evidence was insufficient to sustain the Appellants' convictions because the Commonwealth failed to prove beyond a reasonable doubt that the beverages contained one half of one percent or more of alcohol by volume. The percentage of alcohol by volume is an element of the criminal offense charged under the Liquor Code for furnishing malt or brewed beverages to minors.

The testimonial evidence relating to the type of beverage that was served which was introduced by the Commonwealth was insufficient to sustain the criminal convictions. Familiarity with the taste and appearance of beer does not provide the certitude achieved by proper scientific analysis.[2]

2. We take judicial notice of the fact that brewed beverages that have an appearance and flavor similar to beer, but do not contain one half

The physical experience of drinking beer does not translate itself into an ability to ascertain what percentage of alcohol is contained in a liquid. Without evidence of the percentage of alcohol by volume contained in the beverages served to the minors, the criminal convictions of the Appellants must fail.[3]

The Commonwealth relies upon the Superior Court's decision in *Commonwealth v. Mazarella*, 86 Pa.Super. 382 (1926). In *Mazarella*, the defendant was convicted of possessing and transporting intoxicating liquor. The defendant asserted that the trial court erred in refusing to direct a verdict for the defendant because it was not proved that intoxicating liquor was seized.

The Superior Court held that there was sufficient proof that the liquid found in the defendant's possession was intoxicating liquor. The liquid had been exhibited to the jury for examination and two witnesses described it as whiskey. The defendant had made an inculpatory statement to a sheriff. The court stated that, "Their conclusion is supported, therefore, by sufficient evidence; whiskey is a well-known intoxicant." 86 Pa.Super. at 385.

The Superior Court's finding in *Mazarella* that the evidence was sufficient to sustain the conviction must be viewed in context of the offense charged. The offense of possession of intoxicating liquor did not require proof of a percentage of alcohol by volume. In the instant case,

of one per cent or more of alcohol by volume, are available for sale. Indeed, some of those beverages do not have any alcoholic content.

3. Despite Justice McDermott's protestations that our holding today creates a roadblock in the resolution of the pressing problem of underage drinking, the burden placed upon the Commonwealth is minimal indeed. In this case, the beverage was not bottled. It was drawn from a keg and served in glasses to the investigators. The Commonwealth need only have preserved the evidence that its agents obtained or introduced evidence that demonstrated that the beverage served was identified as a beverage that contains the requisite percentage of alcohol by volume. We require no less in prosecutions for the possession or sale of drugs, even though an experienced police officer may be able to testify that the confiscated substance is in fact an illegal drug. Surely illegal drugs are no less a pressing problem than underage drinking.

however, the specific definition of malt or brewed beverages provided under the Pennsylvania Liquor Code defines an element of the criminal offense charged as well.

The judgments of sentence are vacated.

McDERMOTT, J., files a dissenting opinion in which LARSEN, J., joins.

McDERMOTT, Justice, dissenting.

The issue which the majority addresses [1] is whether the testimony of the police investigators and the minors who consumed the beer was sufficient to establish a violation by appellants of Section 493(1) of the Liquor Code, 47 P.S. § 4-493(1). The majority holds that the testimony was insufficient to establish a violation beyond a reasonable doubt. I interpret the statute differently than the majority, and based on that interpretation I would affirm the judgments of sentence of the courts below.

The relevant portions of the Liquor Code read as follows:

§ 4-493. Unlawful acts relative to liquor, malt and brewed beverages and licensees

. . . .

It shall be unlawful—

(1) *For any* licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other *person, to sell, furnish or give any liquor or malt or brewed beverages,* or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or *to*

---

**1.** Because of its resolution of the sufficiency of the evidence question in favor of appellants, the majority did not address appellants' second question, i.e., whether the investigators' entry into the fraternities was illegal, thereby necessitating a suppression of evidence. Regarding this issue the suppression court found that the circumstances surrounding the officers entry into the fraternities were such that the fraternities could not have entertained a legitimate expectation of privacy. With this conclusion I agree.

*any minor,* or to habitual drunkards, or persons of known intemperate habits. (emphasis supplied).

47 P.S. § 4–493(1).

§ 1–102. Definitions

. . . .

"Malt or Brewed Beverages" means *any beer,* lager beer, ale, porter or similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called. (emphasis supplied).

47 P.S. § 1–102.

Whenever we are confronted with a question of statutory interpretation we are guided in our analysis by the Statutory Construction Act of 1972.[2] That Act provides in relevant part as follows:

§ 1903. Words and phrases.

(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage . . .

1 Pa.C.S. § 1903.

§ 1921 Legislative intent controls.

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. . . .

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(3) The mischief to be remedied.

(4) The object to be attained.

. . . . .

**2.** Act of Dec. 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S. § 1501 *et seq.*

(6) The consequences of a particular interpretation. 1 Pa.C.S. § 1921.

The issue here is whether the Commonwealth proved beyond a reasonable doubt that the fraternities furnished "malt or brewed beverages" to minors: by extension the issue becomes whether the appellants furnished beer to minors.

Appellants have asserted, and apparently the majority has accepted, that "the statute in question is specific in its definition of what is beer," and in appellants' minds such definition requires that the "beer" in question must be proven to contain at least "one half of one per centum or more of alcohol by volume." I disagree.

The majority's position requires that the alcohol content words in the statute (i.e. "containing one-half of one per centum or more of alcohol by volume") be construed as modifying all the preceding words (i.e. "any beer, lager, lager beer, ale, porter or similar fermented malt beverage"). I believe that the proper interpretation is that the alcohol content words only modify the last described beverage, i.e., the "similar fermented malt beverage, ... by whatever such beverage may be called." This interpretation becomes clear by enumerating the defined categories, to wit: "malt or brewed beverages means any [1] beer, [2] lager beer, [3] ale, [4] porter or [5] similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called." In drafting the statute thusly the General Assembly credited the terms beer, lager beer, ale, and porter as having specific meanings within the spectrum of potables; and in an exercise of legislative caution then included a catch-all category to include any beverage which had not acquired a specific meaning but which nonetheless would qualify as a malt or brewed beverage, and contained the designated amount of alcohol.

In interpreting statutes our task is to "ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. 1921(a). That intention may be ascertained, *inter alia,*

by considering "the mischief to be remedied" and "the consequences of a particular interpretation," 1 Pa.C.S. 1921(c)(3) and (c)(6). In the instant case, the mischief to be remedied is underage drinking: an ever-increasing problem too often manifested through the wreckage of cars, bodies and lives on our roads and highways. The majority's interpretation of this statute creates another roadblock in the resolution of this pressing problem.

Additionally, the consequences of the majority's decision on other state and local enactments may be far-reaching and problematic. For instance, will a municipality with a ban on the public drinking of beer or other spirits be required to conduct a chemical analysis of the contents of a beer can? To what purpose? Such contortions only serve to undermine respect for the legal process and to further the public perception that a clever lawyer is more important than the purpose of the law or the guilt or innocence of the defendant.

There is nothing complicated about the resolution of this case. The General Assembly banned the furnishing of "beer" to minors. The fraternities had a beer party to which they admitted minors. The minors requested and were furnished what they believed to be beer.[3] By serving the beer to the minors, the fraternities violated the General Assembly's ban. It is that simple.

I would affirm the trial court's judgments of sentence.

LARSEN, J., joins this dissenting opinion.

3. The undercover officers in this case and some of the minors who were served testified that what they were served, looked, smelled and tasted like beer. At some point in this process, a jury should be allowed to conclude that if something walks like a duck, sounds like a duck, flies like a duck, and swims like a duck, then it is a duck, without having an ornithologist explain to it the biological intricacies that qualify a certain species of winged fowl as a duck.