## Commonwealth v. Piccirillo

*William M. Kern, district attorney,* for the Common-wealth.

*Robert M. Hanak,* for defendant.

ALEXANDER, *P.J.,* May 26, 1993—Michele Jean Piccirillo was found guilty by a district justice of un-derage drinking (18 Pa.C.S. §6308). Defendant appealed to this court and after a bench trial de novo was found guilty. She filed timely post-verdict motions requesting an arrest of judgment and/or a new trial. Defendant's post-trial motions are based upon two contentions: (1) that certain statements made by her to a police officer were improperly admitted into evidence since she was not given *Miranda* warnings,[1] and (2) that the evidence against her was insufficient to show that the beverage she consumed was a "malt or brewed beverage" as defined in 18 Pa.C.S. §§6308 and 6310.6.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d. 694, 86 S.Ct. 1602 (1966).

For the reasons which follow we disagree with both of the defendant's contentions and her motion is denied.

## I

From the testimony at the de novo trial we find the following facts.

Officers Stephen E. McGuire and William Peck of the Clarion Borough Police Department were on routine vehicle patrol in Clarion Borough when they stopped a vehicle which was traveling the wrong way on a one way street. Officer Peck talked with the driver of the vehicle outside the vehicle and Officer McGuire approached the vehicle. Officer McGuire talked to the two occupants of the vehicle, both of whom were sitting on a front seat which was made for only two people including the driver. When Officer McGuire talked with the defendant, who was seated in the middle position, he immediately noticed from her speech and appearance that she was very intoxicated. He asked her if she had been drinking and she replied that she had had four "Bud Lights."

Officer McGuire asked the defendant for identification and learned that she was 20 years of age. He asked her where she had been drinking in order that he could determine in what jurisdiction the crime of underage drinking had taken place. (See *Commonwealth v. Elliott,* C.P. of Clarion County, no. 184 CR 1990, 8 D.&C.4th 486 (1990), in which case this court held that the crime of underage drinking takes place where the beverage is consumed and is not a continuing offense in each jurisdiction where the minor can be found thereafter showing the telltale signs of having been drinking an alcoholic beverage.)

The driver of the vehicle had also been drinking alcoholic beverages and gave his permission for Officer

McGuire to drive the passengers home in the operator's vehicle. The driver rode home with Officer Peck and the defendant and the other passengers were driven home by Officer McGuire. The reason that the officers drove the defendant and her friends home was because they had been drinking too much to be able to safely drive themselves.

At no time was the defendant given *Miranda* warnings and she was issued a citation for underage drinking.

## II

The defendant's first contention is that her statements made to Officer McGuire should have been suppressed because she was not given *Miranda* warnings and her statements were therefore elicited in violation of her right to remain silent under the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.

In support of this contention the defendant cites as indistinguishable *Commonwealth v. Bruder,* 365 Pa. Super. 106, 528 A.2d 1385 (1987), in which case the Pennsylvania Superior Court suppressed statements given to a police officer at a traffic violation stop when no *Miranda* warnings were given. This decision of the Pennsylvania Superior Court, however, was later overruled by the United States Supreme Court. *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). In overruling our Superior Court, the United States Supreme Court followed the rationale of its earlier ruling in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) where it held that persons temporarily detained in ordinary traffic stops such as took place in this case are not "in custody" for purposes of *Miranda*. The defendant's inability to distinguish

the facts in the *Bruder* case have therefore become her nemesis and not her salvation.

There is no question that the Pennsylvania appellate courts could impose a more stringent constitutional standard and demand that *Miranda* warnings be given before the police interrogate the drivers and occupants of vehicles stopped for routine traffic violations. See *Commonwealth v. DeJohn,* 486 Pa. 32, 43, 403 A.2d 1283, 1288 (1979) and *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). The failure, however, of our appellate courts to create a more stringent standard after the United States Supreme Court overruled our Superior Court in *Pennsylvania v. Bruder* is an indication to this court that the federal standard is to be followed. See *e.g., Commonwealth v. Elliott,* 376 Pa. Super. 536, 546 A.2d 654 (1988); *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988), and *Commonwealth v. Toanone,* 381 Pa. Super. 336, 553 A.2d 998 (1989).

The defendant argues that the mandate of *Miranda* applies to persons who are suspected of committing any crime, even a crime no more serious than a summary offense. The defendant is correct in this assertion. See *Berkemer v. McCarty, supra.* The focus of the rule that *Miranda* is not implicated by a routine traffic stop, however, is not upon a gradation of the crime involved but is upon the recognition that such stops usually do not create a police dominated atmosphere which triggers the *Miranda* mandate. When the crime suspected is less serious, however, that fact does indirectly play a part in *Miranda* not being implicated. This is because a custodial situation is less likely to develop when the suspected crime is not serious.[2]

---

2. A custodial situation is also less likely to occur when the suspect is not placed under arrest even though an arrest is certainly not a prerequisite to the implication of *Miranda.* In this case Officer McGuire did not place the defendant under arrest. In fact, he had

Defendant also argues that she was in custody when she was being driven home by the police officer. Certainly if the duration of questioning or the degree of confinement are extended by the police conducting a traffic stop, such a stop is no longer "routine" and the person questioned is entitled to *Miranda's* protection. See *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980). We find, however, as a factual matter, that Officer McGuire drove the occupants of the vehicle home because that was the only safe way to get them there.

If, however, we were to give the defendant the benefit of the assumption that the trip home created a custodial situation, or that she reasonably believed that it did, we would still not grant her request to suppress because the trip home occurred after she had made the statements in question. Any subsequent conduct of the police officer creating a custodial atmosphere would not cause the earlier statements to be suppressed.

We therefore find that the defendant was not entitled to *Miranda* warnings before being questioned by the police officer and that her statements about what she drank and where she drank it were properly admitted into evidence.

### III

The defendant's second contention is that there was insufficient evidence produced by the Commonwealth to prove that she had consumed a "malt or brewed

no right to do so when charged with underage drinking, but was limited to issuing a citation as he did. See *Commonwealth v. Shillingford,* 231 Pa. Super. 407, 332 A.2d 824 (1975) and *Commonwealth v. Bullers,* 410 Pa. Super. 176, 599 A.2d 662 (1991).

beverage" as that term has been defined by the legislature.

In 18 Pa.C.S. §6308, it is provided:

"A person commits a summary offense if he, being less than 21 years of age, attempts to purchase, purchases, consumes possesses or knowingly and intentionally transports any liquor or malt or brewed beverages, as defined in section 6310.6. (relating to definitions)."

"Malt or brewed beverages," as defined in 18 Pa.C.S. §6310.6, include the following:

"Any beer, lager beer, ale, porter or similar fermented malt beverage *containing 0.50 percent or more of alcohol by volume,* by whatever name such beverage may be called." (emphasis added)

As a fact-finder this court found that the Commonwealth had proven beyond a reasonable doubt that the beverage consumed by the defendant contained more than one-half of 1 percent of alcohol by volume. In reviewing that finding of fact in the context of a post verdict motion, we must now view all of the evidence admitted at the trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth to determine if our prior finding was supported by evidence and inferences sufficient in law. *Commonwealth v. Jackson,* 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984).

To support her contention the defendant relies upon *Commonwealth v. Tau Kappa Epsilon,* 530 Pa. 416, 609 A.2d 791 (1992). In that case the Pennsylvania Supreme Court ruled there was insufficient evidence to prove that a beverage contained one-half of 1 percent or more of alcohol by volume when the police officers saw and tasted the beverage which they believed to

be beer, but did not have it analyzed for alcoholic content.[3] In finding that there was insufficient evidence, the court in *Epsilon* noted that the beverage was not in a marked bottle, and the court also took judicial notice "...that brewed beverages that have an appearance and flavor similar to beer, but do not contain one half of 1 percent or more of alcohol by volume, are available for sale. Indeed, some of these beverages do not have any alcoholic content." *Commonwealth v. Tau Kappa Epsilon, supra* at 420-21 n.2, 609 A.2d at 793 n.2.

In *Commonwealth v. Williamson,* 532 Pa. 568, 616 A.2d 980 (1992) the Supreme Court again found there to be insufficient evidence to prove the requisite alcoholic content when a minor was found standing next to a vehicle on which an open can of beer was sitting, when kegs of malt beverage were found in the vicinity, and when the officer smelled what he believed to be beer on the minor's breath. The court stated that there was "...no evidence [the minor] behaved in a way that exhibited any degree of intoxication." *Williamson, supra* at 571, 616 A.2d at 981.

The court in *Williamson* also noted that "...there is a reasonable possibility that consumption of a nonalcoholic or a very low-alcohol malt or brewed beverage accounted for the odor on [the minor's] breath," and again the court took judicial notice that brewed beverages are available which contain little or no alcohol. *Id.*

---

3. The court in *Epsilon* was construing a definition of malt or brewed beverage contained in the Liquor Code (47 P.S. §4-493 (1)) and not the similar definition found in 18 Pa.C.S. §6310.6, which latter definition is involved in this case. There is no meaningful distinction, however, between the two statutes for the purpose of the issue to be decided. See *Commonwealth v. Williamson,* 532 Pa. 568, 616 A.2d 980 (1992), where the Pennsylvania Supreme Court applied the holding in *Epsilon* to the definition contained in 18 Pa.C.S. §6310.6.

We do not agree with the defendant's contention that the *Epsilon* case makes it necessary in every incident for the police to have direct evidence of the alcoholic content of the beverage consumed in order to sustain a conviction for underage drinking. The facts of *Epsilon* and *Williamson* were found insufficient to sustain a conviction, but the opinions in those cases do not preclude a conviction based in part upon circumstantial evidence.

This case has one important distinction from *Epsilon* and *Williamson*—the defendant in this case was very intoxicated. This obvious intoxication is compelling circumstantial evidence that the defendant was not drinking a low-alcoholic malt beverage the existence of which created the reasonable doubt in both *Epsilon* and *Williamson*.

The minors in *Epsilon* and the minor in *Williamson* showed no signs of intoxication. In *Epsilon* there was only the appearance and odor of the beverage from which the fact-finder could conclude that the required quantity of alcohol was present. In *Williamson* the fact-finder only had the odor on the minor's breath and the fact that beer of some kind was in the vicinity from which to conclude that a prohibited beverage had been consumed. In *Williamson* the court specifically noted that there was no evidence of intoxication.

In both *Epsilon* and *Williamson* the court recognized that there was a reasonable possibility that the suspect beverage could be the type of brewed beverage which contains less than one-half of 1 percent alcohol but looks and smells like an intoxicating beverage. In so finding, the Supreme Court acknowledged that such low-alcohol brewed beverages exist. A logical and compelling extension of this acknowledgement is a recognition that such beverages do not induce intoxication.[4]

---

4. This court is taking judicial notice that the brewed beverages containing little or no alcohol which were judicially noticed by the Supreme Court in *Epsilon* and *Williamson* do not induce intoxication.

When the minor is intoxicated, as was the defendant in this case, it would be ludicrous to find that there was a reasonable possibility that she had been drinking only brewed beverages with less than one-half of 1 percent alcohol. Her intoxicated condition makes the conclusion inescapable that she was drinking a beverage with sufficient alcohol content to cause that condition.

We therefore find that the Commonwealth has produced sufficient evidence to prove beyond a reasonable doubt that the defendant consumed a brewed or malt beverage within the meaning of 18 Pa.C.S. §§6308 and 6310.6.

An appropriate order follows:

## ORDER

And now, May 26, 1993, for the foregoing reasons the defendant's motion for a new trial and arrest of judgment are denied and the court administrator is directed to schedule a time for the defendant to be sentenced.

---

This notice is being taken without a request being made by the Commonwealth because we believe that it would be illogical to accept the Supreme Court's acknowledgement of the existence of such beverages without recognizing the significance of their containing little or no alcohol. We have not, however, taken judicial notice that "Bud Light," which is the brand of beer the defendant admitted drinking, is one of the beverages listed in the Pennsylvania Bulletin, vol. 22, no. 32, August 8, 1992 as a malt beverage containing one-half of 1 percent or more of alcohol by volume. The Commonwealth did not request this court to take judicial notice of this publication until after the verdict had been entered and we wish to avoid the unsettled area of law implicated by taking judicial notice when not requested to do so and when the opposing party is not afforded an opportunity to object. (See *L. Packel and A. Poulin,* Pennsylvania Evidence, §1001 (1987)).