J-S38023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLARENCE HENRY ROBINSON | : | |
| | : | |
| Appellant | : | No. 346 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002513-2022

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED JANUARY 15, 2025**

Clarence Henry Robinson ("Robinson") appeals from the judgment of sentence imposed following his convictions by a jury of robbery and other crimes.[1] He argues that the Commonwealth failed to disprove self-defense beyond a reasonable doubt and that the trial court erred by allowing the Commonwealth to play a surveillance video showing the confrontation. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Specifically, Robinson was convicted of 18 Pa.C.S. § 3701(a)(1)(ii) (robbery – threatening immediate serious injury); 18 Pa.C.S. § 2702(a)(1) (aggravated assault – attempting to cause serious bodily injury); 18 Pa.C.S. § 2702(a)(4) (aggravated assault – attempting to cause or causing serious bodily injury with a deadly weapon); 18 Pa.C.S. § 907 (possessing an instrument of crime); 18 Pa.C.S. § 3929(a)(1) (retail theft); and two counts of 18 Pa.C.S. § 2701(a)(1) (simple assault).

At approximately 6:30 a.m. on April 26, 2022, Anwar Marzouk ("Marzouk") was working by himself at a 7-Eleven convenience store in Middletown Township. N.T., 6/20/2023, at 46. Marzouk observed Robinson place various items inside his jacket and leave the store without paying. *Id*. at 47. Marzouk followed Robinson outside and instructed him to "take out that stuff." *Id.* at 48. Robinson began placing the items on the ground. *Id.* At that point, two customers "came to the parking lot ... saw what was going on, and they called the police[.]" *Id.* Robinson then grabbed a "metal plate that was placed on top of the trashcan outside," which Marzouk described as "like a cigarette ashtray[.]" *Id.* at 48-49. At this point, Marzouk "grabbed him and pulled him back inside the store." *Id.* at 49.

Robinson walked to the back of the store, where he filled two large cups with hot coffee. *Id.* at 50. Robinson approached Marzouk, who was standing near the door, and threw the contents towards his face. *Id.* Marzouk was mostly uninjured as he was wearing a heavy jacket. *Id.* Video surveillance from inside the store shows Marzouk move to the front door, while Robinson returned to the coffee station. Marzouk grabbed an ice scraper from a store display "to protect myself," *id.* at 77, exited the store, and then "closed the door from outside in fear that he may repeat what he did [while] waiting for the police to arrive." *Id.* The video shows Robinson approaching the door holding two new cups of coffee.

From outside, Marzouk observed Robinson move "towards the pizza oven … by the cash register" while still holding the two cups. *Id.* at 50-51. Because Robinson "was approaching the register," Marzouk "was afraid that he may open it and take the cash," so he reentered the store. *Id.* at 51. The video shows Marzouk on the customer side of the counter waving the ice scraper towards Robinson, who was standing on the employee side. Robinson threw one of the cups of coffee towards Marzouk, which was largely ineffective because of a plastic panel separating the two. Marzouk crossed over to the employee side of the counter and approached Robinson, who threw the remaining cup of coffee. Because Marzouk saw "that he no longer had hot coffee in his hand," *id.*, he physically engaged Robinson, who was now standing near the cash register. However, unbeknownst to Marzouk, Robinson had obtained a circular pizza cutter. *Id.* at 52.

The surveillance video captures the subsequent physical confrontation. Marzouk struck Robinson's head with the ice scraper, which fell to the floor. Robinson responded by pushing and shoving Marzouk, and the two men scuffled for approximately ten seconds. Robinson then attacked Marzouk with the sharp end of the pizza cutter, striking him in the head. Shortly thereafter, two citizens entered the store and assisted Marzouk in subduing Robinson. One of the men retrieved an object from the store, which was described by Marzouk as "a hand sanitizer stick … looks like a stick, like a pole." *Id.* at 85. The other man, William Levitsky ("Levitsky"), sustained an injury on his arm

- 3 -

as he tried to pry the cutter away from Robinson.[2] The three men pinned Robinson to a wall and restrained him until police arrived about one minute later. Robinson submitted peacefully to the police officer and was arrested. Marzouk was transported to the hospital, where he received three or four staples to close his head wound.

Robinson did not testify. His trial attorney conceded in closing argument that he "made a mistake" by stealing various small items, but claimed self-defense as to everything else, urging the jury to conclude that Marzouk "made the choice to escalate the situation and continue time and time again to reengage in physical altercation" with Robinson. N.T., 6/21/2023, at 45. Counsel for Robinson explained that he went to the coffee station after being blocked from leaving "to see if there's any exit in the back." *Id.* at 48. He claimed that he then went "behind the counter in search of a panic button to call for police," as he was "not aware whether police [had] been called and he [wa]s eager to have the police arrive to help him." *Id.* at 48-49. Thus, when Marzouk approached the counter "with that … ice scraper in hand" and waved it towards Robinson, he feared for his safety. *Id.* at 49.

During the attack itself, Robinson argued that Marzouk placed him "in a headlock with his arm around his neck." *Id.* When the two other customers joined the fray, one of whom had "a metal rod" of some type, Robinson feared

---

[2] Levitsky and the other unidentified man did not testify. The injury to Levitsky was established by photographs taken by the responding police officer.

for his life. *Id.* at 50. Robinson denied an "intent to cause serious bodily injury" to Marzouk, stating he was merely trying "to figure out a way to get out of the store[.]" *Id.* at 53. He had "grabb[ed] whatever random items he could find, a pizza cutter, coffee, to protect himself." *Id.* at 53-54.

The Commonwealth responded that Marzouk was not the aggressor, noting that Robinson struck the first blow when confronted outside. *Id.* at 63. The Commonwealth stressed that Marzouk was entitled to restrain Robinson and push him back inside the store, citing the "shopkeeper's privilege," which is a statutory conferral of authority to detain a suspected shoplifter "in a reasonable manner for a reasonable time on or off the premises[.]" 18 Pa.C.S. § 3929(d). The prosecution argued that Robinson chose to obtain hot coffee and throw it on Marzouk while lawfully detained inside the store, making him the aggressor. N.T., 6/21/2023, at 64. As to the claim Robinson was looking for a panic button, the Commonwealth conceded that the jury was free to infer that fact but stressed that "there's been no evidence to that effect." *Id.* at 84-85. The government urged the jury to reject Robinson's argument that Marzouk threatened Robinson by waving the ice scraper; instead, the Commonwealth asserted that Marzouk did so only because Robinson chose to approach the cash register. *Id.* at 86. Moreover, Robinson had obtained a pizza cutter "well before [Marzouk] makes his way behind the counter." *Id.* at 66. Because Robinson responded by again throwing coffee, the prosecutor

portrayed Robinson as the aggressor throughout, noting "[t]he only person who ever escalated anything was [Robinson]." *Id.* at 89.

The trial court instructed the jury on self-defense, the shopkeeper's privilege, and the use of force to defend property. As to self-defense, the Commonwealth and Robinson disagreed on whether Robinson had employed deadly or non-deadly force, and the trial court chose to instruct the jury on both theories. Finally, as to the defense of property, the trial court told the jury:

> In general, the law does not permit a defendant to use force against a person who is using force to protect their occupation or possession of property where a defendant knows that that person is doing so under a claim of right to protect that property. However, a defendant is justified in using force in such a situation if the defendant reasonably believes that such force is necessary to protect himself or herself against death or serious bodily injury.

*Id.* at 123.

The jury convicted Robinson of seven crimes as previously stated.[3] The trial court initially sentenced Robinson to 90 to 180 months of incarceration, and no further penalty at all other counts; it subsequently reduced his sentence to 72 to 144 months of incarceration following post-sentence motions. Robinson timely filed a notice of appeal and complied with the trial court's order to file a concise statement. He presents two issues for our consideration.

---

[3] The jury acquitted Robinson of robbery – threatening serious bodily injury as to Levitsky, and robbery – causing serious bodily injury as to Marzouk.

- 6 -

1.    Was the evidence insufficient as a matter of law to support [Robinson]'s convictions for aggravated assault, simple assault, and possession of an instrument of crime, where the Commonwealth failed to meet its burden of proving beyond a reasonable doubt that [Robinson] did not act in justifiable self-defense?

2.    Did the trial court abuse its discretion in admitting … a compilation of surveillance footage, where the witness purporting to authenticate it indicated that he was not the person responsible for retrieving the video footage, never indicated that he had any familiarity with the maintenance or storage of the footage, equivocated as to whether he had ever seen the footage before, and where the footage itself depicted things that the witness could not have possibly personally observed?

Robinson's Brief at 10.

Robinson's first issue challenges his convictions for the crimes after the scuffle, claiming that the Commonwealth failed to disprove his self-defense claim. Section 505 of the Crimes Code sets forth the statutory criteria that justify the use of force. Subsection (a) establishes the basic rule:

> **(a) Use of force justifiable for protection of the person**.-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S. § 505(a).

"[W]here self-defense is properly joined, the Commonwealth has the burden to disprove that defense beyond a reasonable doubt." *Commonwealth v. Mouzon*, 53 A.3d 738, 743 (Pa. 2012). If the Commonwealth meets its burden, "then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is

at issue." ***Commonwealth v. Burns,*** 765 A.2d 1144, 1149 (Pa. Super. 2000). Because this issue presents a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth as verdict winner, draw all inferences in its favor, and apply a de novo standard of review. ***See id.***

What the Commonwealth must disprove depends on whether Robinson used deadly force or non-deadly force, and the jury was instructed as to both. Section 505(b) provides limitations on the use of force. As relevant to these facts, the statute provides the following limitations on the use of deadly force.

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
>> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
>>
>> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(b).

Thus, if the actor used deadly force the Commonwealth must disprove the defense by establishing at least one of the following elements beyond a reasonable doubt: "(1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the

retreat was possible with complete safety." *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009) (citation omitted).

Non-deadly force is not explicitly limited by subsection (b), but the statute makes clear that there is no duty to retreat. "Except as otherwise required by this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating ....". 18 Pa.C.S. § 505(b)(3). Caselaw imposes the limitation that an actor facing non-deadly force may respond with force "so long as it is only force enough to repel the attack." *Commonwealth v. Pollino*, 467 A.2d 1298, 1301 (Pa. 1983). Additionally, the parties agree that the provocation doctrine applies, despite a statutory absence of that limitation.[4] Because the parties assume that the doctrine applies, and the jury was instructed on that point without objection, we likewise accept it as a limitation on the right of self-defense. *See* N.T., 6/21/2023, at 121 (trial judge instructing the jury that with respect to non-deadly force the Commonwealth prevails if it shows that Robinson "engaged in conduct that demonstrated his intent to use unlawful force against the alleged victim, and by that conduct he provoked the use of force against himself").

_____

[4] We note that the comment to the statute states that the "intent of the section is to codify existing case law pertaining to 'self-defense' and to cover in a single rule the law governing the use of defensive force against both attack and in crime prevention." 18 Pa.C.S. § 505, cmt.

With the foregoing in mind, we turn to the specific arguments.[5] Robinson principally treats the starting point for our analysis as Marzouk waving the ice scraper towards him shortly before the physical confrontation. Robinson's Brief at 18. Robinson maintains that "the commission of a nonviolent retail theft and subsequent surrender of store property is not

_____

[5]  We note that the parties address the self-defense claim on the merits, thereby presuming that the jury must have reached the issue. However, as previously noted the jury was instructed on defense of property, which authorized Marzouk to use non-deadly force and limited Robinson's ability to respond in kind. **See** 18 Pa.C.S. § 505(b)(1)(ii)(C).

> The use of force is not justifiable under this section … to resist force used by the occupier or possessor of property or by another person on his behalf, where the actor knows that the person using the force is doing so under a claim of right to protect the property, except that this limitation shall not apply if … the actor believes that such force is necessary to protect himself against death or serious bodily injury.

**Id.**  Thus, if the jury determined that Marzouk was protecting the store's property, Robinson was not authorized to use **any** force unless he "believe[d] that such force is necessary to protect himself against death or serious bodily injury."  **See id.** § 501 (defining "believes" as "reasonably believes" or "reasonable belief").

The jury was not issued special interrogatories nor was the panel instructed to proceed on the self-defense theories only if it rejected Marzouk's testimony that he was attempting to defend the property. Thus, we do not know if the jury actually reached the question of self-defense. By the same token, the jury may have ignored the defense of property theory and decided the case on self-defense grounds. There is no question that once the issue of self-defense is raised, the Commonwealth bears the burden of disproving it beyond a reasonable doubt. The record further reflects that the Commonwealth did not argue before the trial court or here that Marzouk was entitled to effectuate a citizen's arrest of Robinson for the commission of a crime. As it is the Commonwealth's burden to disprove self-defense once raised, we address the self-defense argument on its terms; otherwise, we would risk affirming Robinson's guilt on a basis not decided by the jury.

adequate provocation" to justify the use of force by Marzouk. *Id.* at 36. Robinson avers that there was no evidence he was attempting to take anything from the cash register and characterizes his own actions as "a good faith effort to withdraw from the confrontation." *Id.* at 37. In his view, Marzouk was not "permitted to pursue" him, thus making Marzouk the aggressor. *Id.* Robinson asserts that any original justification by Marzouk to use force had ended, as the final encounter between the men was a "new" interaction that had no connection to the preceding circumstances. *Id.* at 26 ("Where the original assailant becomes the assaulted, it is he who then has a right of self defense.") (quoting *Commonwealth v. Edwards*, 292 A.2d 361, 364 (Pa. 1972)). Accordingly, he contends that the injuries inflicted during the scuffle with Marzouk as well as the injuries suffered by Levitsky were all justified by self-defense.

The Commonwealth views the case more holistically and directs our attention to Robinson's actions throughout his interaction with Marzouk. For example, the Commonwealth offers that Robinson "was the first to use force … when he delivered the blow to … Marzouk's head with the metal ashtray." Commonwealth's Brief at 18.[6] Addressing Robinson's fundamental point that any previous use of force by Robinson was not relevant to the self-defense

---

[6] This incident was apparently the basis for the robbery charge, which Robinson does not contest. We say "apparently" because the Commonwealth also charged Robinson with a count of robbery as to one of the bystanders, suggesting that the robbery occurred inside the store.

- 11 -

claim after Marzouk locked Robinson inside the 7-Eleven, the Commonwealth emphasizes that the statutory entitlement to self-defense applies only if the other party's use of force was itself unlawful. *Id.* at 11-12. The Commonwealth argues that Marzouk was entitled, by virtue of the "shopkeeper's privilege," to lawfully detain Robinson. *Id.* at 13. That privilege is codified within the retail theft statute and states in full:

> **(d) Detention.**--A peace officer, merchant or merchant's employee or an agent under contract with a merchant, who has probable cause to believe that retail theft has occurred or is occurring on or about a store or other retail mercantile establishment and who has probable cause to believe that a specific person has committed or is committing the retail theft may detain the suspect in a reasonable manner for a reasonable time on or off the premises for all or any of the following purposes: to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile establishment and, if so, to recover such merchandise, to inform a peace officer, or to institute criminal proceedings against the suspect. Such detention shall not impose civil or criminal liability upon the peace officer, merchant, employee, or agent so detaining.

18 Pa.C.S. § 3929(d).

At the outset, we reject the Commonwealth's attempt to focus on whether Marzouk's use of force was lawful based on the shopkeeper's privilege. This statute would preclude imposing civil or criminal liability on Marzouk if his actions in attempting to detain Robinson were reasonable; it does not necessarily authorize force by itself. *Id.* In effect, this argument is a variation of the defense of property claim. Because of the nature of the jury

instructions, we instead proceed to examine whether the Commonwealth sufficiently disproved the self-defense claim.[7]

Beginning with deadly force, we note that "[d]eadly force" is defined as "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S. § 501. Here, we agree that the Commonwealth did not prove beyond a reasonable doubt that Robinson employed deadly force. First, we have the benefit of the video footage, and it does not appear that Robinson used the weapon in a way likely to cause death or serious bodily injury (e.g., Robinson did not attempt to slice Marzouk's throat). Furthermore, the jury specifically found that Marzouk did not suffer serious bodily injury. N.T., 6/21/2023, at 135 ("Q: Do you find beyond a doubt that the defendant caused serious bodily injury?" FOREPERSON: No.").

That leaves whether the Commonwealth disproved that Robinson's use of non-deadly force was justifiable in response to Marzouk's own use of non-deadly force. We find that the jury could rationally conclude that Robinson

---

[7] The Commonwealth's argument also begs the question as to whether the trial court erred by allowing the jury to decide self-defense. **See** Commonwealth's Brief at 11 (asserting that "the limitations in subsection (b)" are irrelevant if the use of force by Marzouk was lawful). The Commonwealth does not cite a case establishing that a legally erroneous instruction on self-defense is an adequate substitute for meeting its burden of disproving a self-defense claim presented to the factfinder, and its brief discusses how the evidence properly disproves a valid self-defense claim.

provoked Marzouk to use force by attacking him without justification. The objective circumstances readily support that Robinson was, in fact, intending to do bodily harm to Marzouk throughout the entire encounter. As the Commonwealth observes, Robinson struck the first blow with the metal ashtray outside of the store. Once back inside, counsel for Robinson argued that he was simply trying to find a panic button when he went to the rear of the store, but this does not explain why he took the time to fill two cups with hot coffee moments after Marzouk first made him reenter the store, which he then threw on Marzouk. Notably, Marzouk posed no threat at that moment in time, as he had yet to grab the ice scraper. Nor does his version account for the fact that he refilled the coffee cups and then again threw them at Marzouk immediately prior to Marzouk's physical response. The principle that an actor exercising non-deadly force has no duty to retreat equally applies to Marzouk. Thus, when Robinson chose to throw coffee, Marzouk was entitled to respond. The notion that Marzouk "escalated" the encounter by approaching Robinson strips him of his right to enter his own store. While that may have been the pragmatic choice given that the police were on their way, it was not legally mandated.

More importantly, we disagree with Robinson's attempt to limit our analysis to the events immediately preceding the physical confrontation in assessing whether Robinson was the aggressor who provoked a response. *See Commonwealth v. McComb*, 341 A.2d 496, 499 (Pa. 1975) (when

assessing the reasonableness of the use of deadly force, "the trier of fact is required, not only to evaluate the conduct of the appellant during the final confrontation but also to view it in light of those circumstances that preceded and precipitated that final confrontation"). The same logic naturally applies where a defendant is charged for the unlawful use of non-deadly force. That Robinson anticipatorily armed himself, and also threw hot coffee on Marzouk before Marzouk had any kind of weapon in hand, by itself justifies a rational inference that Robinson was the aggressor and provoked the response. The rational inferences, when drawn in favor of the Commonwealth as verdict winner, establish that Robinson provoked Marzouk to use non-deadly force. *Cf. Commonwealth v. Smith*, 97 A.3d 782, 787-88 (Pa. Super. 2014) ("To claim self-defense, the defendant must be free from fault in provoking **or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force."). Robinson thereby forfeited his right to claim self-defense. *See Commonwealth v. Samuel*, 590 A.2d 1245, 1248 (Pa. 1991) (a defendant forfeits right to self-defense if the provocation doctrine applies). The Commonwealth therefore satisfied its burden, and Robinson's first claim is without merit.

Robinson's second issue is that the trial court erred by overruling his objection to the authentication of the surveillance video played at trial. We agree with the Commonwealth that Robinson has failed to properly preserve the issue for our review.

The following discussion occurred at a hearing shortly before the jury entered.

> [COMMONWEALTH]: We are playing – I am going to play a compilation video of surveillance video, sort of snippets put together just to make it faster and easier. I don't believe there's any objection to that from [Robinson].
>
> [ROBINSON'S COUNSEL]: I don't have any objection. I received the original videos which are extremely short clips. I understand [the Commonwealth] has sort of lumped them together just for ease and efficiency. My client has seen that video, I have seen that video, and I have no objection to playing that.

N.T., 6/20/2023, at 7-8.

The parties then made their opening arguments, and the Commonwealth called Marzouk as its first witness. When the Commonwealth moved to introduce the video, Robinson objected on the basis that the Commonwealth failed to lay a proper foundation. *Id.* at 56. At sidebar, Robinson argued that Marzouk could not authenticate the video, as "he has no personal knowledge or experience with this video system." *Id.* at 57.

Robinson disagrees with the Commonwealth that his pretrial stipulation is dispositive, arguing that he was merely agreeing that he did not object to the compilation of the videos whereas his trial objection concerned authentication of the separate videos. Robinson's Reply Brief at 2-3. We conclude that any ambiguity on this point is settled by the opening argument. Consistent with the pretrial representation that Robinson and his attorney watched "the video" and had no objection to playing that video at trial,

Robinson referenced the contents of the video to support his claim of self-defense. For example:

> The next thing that happens is when he's walking towards the – back towards the front of the store, he notices that the employee of the 7-Eleven has now gone to one of the nearest aisles to the front of the store and grabbed an ice pick [sic], like the kind that in the wintertime you would use to, you know, bang and scrape the ice off of your car, something that has some metal on it or is very hard plastic, so my client sees that now he has a weapon. You'll see him waive it at some points at my client. You'll see him point at my client with it.

N.T., 6/20/2023, at 32-33. Robinson argued that the video shows him "being held with both hands by the 7-Eleven employee, mostly you'll see by the collar he's being held in place where he is, two other men come in." *Id.* at 34-35.

We will not permit Robinson to rely on the video's contents as part of an attempt to persuade the jury to accept his self-defense claim, only to turn around and claim on appeal that the video should not have been played. In fact, the inability to separate the merits of his self-defense claim from the video renders it impossible to determine the prejudicial effect, if any, of entering the video into evidence. Without the video, Robinson may not have been entitled to the self-defense instruction. We therefore agree that the claim has not been preserved for our review.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2025